---
Edgell v. Hart.
---

## EDGELL *vs.* HART.

In August, 1848, B. bought of the plaintiff a stock of goods in a store then occupied by the plaintiff. The value of the goods was over $2000, which B. was to pay at the rate of $100 a month, until the whole amount was paid. Notes were given by B. for the several payments, and a mortgage of the goods was also given by him to the plaintiff, to secure the payment of the notes; which mortgage was renewed Aug. 14, 1849. (The mortgage contained provisions that in case of non-payment, &c. the mortgagee might enter the premises of the mortgagor, and take and sell the goods, &c.; but that until default in payment, the mortgagor should continue in possession of the goods, and the full and free enjoyment of the same, unless he, or some other person, should attempt to sell, assign, secrete, remove, or otherwise dispose of them, in which case the mortgagee was to be at liberty to take possession thereof, &c. A schedule of the goods was annexed to the mortgage, at the end of which was the following clause: " Together with all other articles mentioned and specified in a bill of sale this day executed by the party of the second part to the said party of the first part; and to include also all other articles of a like nature, which may be put, or which may be, in said store whenever said party of the second part may be entitled to enforce the within mortgage; said party of the first part not to sell any of the said goods upon credit. If any of the said goods are sold upon credit, that shall be sufficient cause of forfeiture of the within mortgage and entitle said E. (the mortgagee) to treat the same accordingly, at his election." After the execution of the mortgage, B. took possession of the goods mortgaged, and continued the business in the store previously occupied by the plaintiff, adding to the stock from time to time, by purchases made of

Edgell *v.* Hart.

other persons, and paying the notes as they became due, out of the sales of the goods. On the 4th of October, 1849, the goods in the store were levied on by the defendant, as sheriff, upon executions in favor of creditors of B. *Held*, that the schedule of property, annexed to the mortgage, must be taken as a part of the mortgage, and as qualifying its effect; and that taking both papers together, they showed upon their face a transaction which was illegal, and could not be sustained:

*Held also*, that the goods were liable to seizure and sale on executions against B., the mortgagor, in favor of his creditors, notwithstanding the mortgage.

Where the illegality of a transaction stands out upon its face, upon the very papers under which the plaintiff claims title, it becomes a question of the legal construction of the papers; and upon that question there is nothing to submit to the jury.

A provision, in a chattel mortgage, giving to the mortgagor the right of selling the goods mortgaged—provided he sells for ready pay—without restriction as to price or quantity, and without being under obligation to apply the proceeds to the payment of the mortgagee, or any other creditor, renders the mortgage void, as against creditors.

Chattel mortgages are regarded with suspicion, and ought never to be held valid, where the object appears to be any thing beyond a fair *bona fide* security for a just debt. That is their only legitimate object and office. Benefit to the mortgagor is no part of their theory. *Per* WELLES, J.

APPEAL from a judgment rendered at a special term, and motion for a new trial, on the ground that the verdict was contrary to the evidence. This was an action under the code, to recover the possession of personal property alledged to have been taken by the defendant from the plaintiff. The answer admitted the possession, of the goods in question, in the defendant, and denied property in the plaintiff. It also set up a justification of the taking, by the defendant, as sheriff of the county of Monroe, on the 4th of October, 1849, under two executions, one in favor of George C. Buell against Lyman Bostwick, issued out of the supreme court, for $565,69, with directions to levy $85,07, with interest from the 4th of October, 1849 ; the other, in favor of Coman, Hopkins and Lathrop, against said Bostwick, for $988,50, with directions to levy that amount, with interest from October 2d, 1849. The answer alledged the goods to be the property of Bostwick, and in his possession as a retail grocer, he carrying on business as such, with the goods in question, at store No. 8, Front-street, Rochester, the goods constituting his

stock in trade as such merchant, and that he was proceeding to
sell the goods in the usual course of business, as such merchant,
with the knowledge of the plaintiff, and was treating them as
his own property.   That the goods in question constituted the
balance of a large stock out of which Bostwick had, with the
knowledge of the plaintiff, been carrying on the said business
for more than a year previous, for the purpose of making
profits, &c. under and in his own name and for his own benefit.
The answer further stated, that the goods mentioned in the
complaint were of the value of $863;10, and the defendant de-
manded judgment for that sum, with interest from October 25th,
1849, the day on which the goods were taken by the coroner,
with costs, &c.

The reply admitted that the defendant was sheriff, &c.; and
that as such, on or about October 4th, 1849, by virtue of the
executions mentioned in the answer, he levied upon the goods
in question, took them into his possession, and detained them
until they were taken from him by virtue of proceedings in this
action.   The reply denied that the goods, at the time of the levy,
were the property of Bostwick.   And the plaintiff claimed them
by virtue of a chattel mortgage, executed by Bostwick to the
plaintiff on the 14th of August, 1849, and dated on that day.
The mortgage, a copy of which was annexed and referred to in
the reply, was expressed to be for the consideration of $1000,
and conveyed to the plaintiff " all groceries, provisions, produce,
fixtures, &c. &c. and all other goods and chattels whatsoever,
mentioned and expressed in the schedule hereto annexed, now
remaining and being in the store No. 8, Front-street, in the city
of Rochester."   The condition of the mortgage was to pay the
plaintiff $1000, as follows : " $100 in 12 months ; $100 in 13
months ; $100 in 14 months ; $100 in 15 months ; $100 in 16
months ; $100 in 17 months ; $100 in 18 months ; $100 in 19
months ; $100 in 20 months, and $100 in 21 months, all from
the 14th of August, 1848, with interest after six months from
the date of said notes and amounts specified."   The mortgage
then contained a provision that in case of non-payment, &c. the
mortgagee might enter the premises of the mortgagor, &c. and

Edgell *v.* Hart.

take and sell the goods, and after satisfying the moneys due, and expenses of sale, &c. to return the overplus to the mortgagor. It then provided that until default in payment, &c. the mortgagor should continue in possession of the goods, and the full and free enjoyment of the same, unless the mortgagor or some other person should attempt to sell, assign, secrete, remove or otherwise dispose of them in any way whatever, in which case the mortgagee was to be at liberty to take immediate possession, and keep the same until default in payment, and then sell them as aforesaid. A schedule of goods, &c. was annexed to the mortgage, at the end of which was the following: "Together with all other articles mentioned and specified in a bill of sale this day executed by the party of the second part to the said party of the first part; and to include also, all other articles of a like nature, which may be put, or which may be in said store whenever said party of the second part may be entitled to enforce the within mortgage; said party of the first part not to sell any of the said goods upon credit. If any of the said goods are sold upon credit, that shall be sufficient cause of forfeiture of the within mortgage, and entitle said Edgell to treat the same accordingly, at his election." The reply further stated, that the mortgage was given in good faith, and without any intent to defraud the creditors of Bostwick, or any one else. It also stated that the defendant, after the levy, advertised the goods for sale under the executions; also, a demand and refusal to deliver the goods, before the commencement of the action. The reply denied that the goods were of the value of $863,10, and stated that since the plaintiff received them, they were sold for about $650, which he believed their full value; and claimed that the levy and offer to sell by the defendant, entitled the plaintiff to the possession and ownership of the goods.

On the trial at the Monroe circuit, in December, 1849, before Sill, justice, the demand of the goods by the plaintiff before the commencement of the action, and the defendant's refusal to deliver them, was admitted; and that the defendant, as sheriff, had advertised the goods for sale before the demand was made.

It was also admitted that the facts stated in the answer and not denied in the reply, were true, as stated in the answer.

It appeared by the evidence of Henry H. Lambert, the only witness sworn on the trial, that Bostwick bought out the plaintiff in August, 1848. That an inventory of the goods was taken, which amounted to over $2000, for which Bostwick was to pay $100 a month until all was paid for. The store, No. 8, Front-street, where the goods were, and where the inventory was taken, was kept open while they were taking the inventory, and nothing was concealed. Notes were given for the payments, and Bostwick gave a mortgage on the goods to secure the notes. The plaintiff had been in the same business, and then went into another business near by, on the same street. The witness remained in the store as clerk to Bostwick. He had previously, and up to the sale to Bostwick, been clerk to the plaintiff. Eleven or twelve of the notes had been paid. The chattel mortgage, a copy of which was annexed to the reply, dated August 14, 1849, was then produced, and proved, with the schedule thereto annexed. The notes were given with a former chattel mortgage in 1848.

Bostwick continued the business until the 3d October, 1849, when the defendant took possession. The September note had then been paid. There had then been eleven of the notes paid. They were regularly paid as they became due, as long as Bostwick remained. He went away, to California, the week before the store was closed. The property mentioned in the complaint was part of the property taken by the sheriff, and was the same as contained in the mortgage given in August, 1849, and was in the store at the time of the mortgage. The property was described in the complaint as being worth at the time the sheriff took it, $801,63. It was worth, in the opinion of the witness, $700, and had been in the store since the giving of the last mortgage. On cross-examination by the defendant's counsel, the witness testified that Bostwick bought of Coman, Hopkins & Co., the plaintiffs in one of the executions mentioned, from $1800 to $2000 worth of goods. His first purchase of them was in the fall of 1848, amounting to about $900. The next and last was in the spring of 1849. There was then a consid-

Edgell *v.* Hart.

erable part of the goods sold which had been purchased of the plaintiff. When the first mortgage was given he had purchased no goods of Coman, Hopkins & Co. The first mortgage was upon no goods but those bought of the plaintiff, which amounted to about $2200. From the 14th August, 1848, until the spring purchase in 1849, Bostwick had sold from $1000 to $1500 of the goods. When the sheriff made the levy the goods in the store amounted to about $1200 by the inventory then taken, at cost prices. The plaintiff then read in evidence the chattel mortgage and schedule, of which copies were annexed to the reply, and which had been proved. The mortgage was filed in Monroe county clerk's office, August 15th, 1849. The plaintiff also read in evidence the mortgage given by Bostwick at the time of the purchase in August, 1838, which had been filed in Monroe county clerk's office, August 14, 1848. It also appeared by the testimony of the witness Lambert, that when he and Bostwick bought clothing and necessaries for themselves and Bostwick's family, Bostwick gave due bills payable in goods out of the store, and paid his family expenses out of the store. Bostwick and his family took goods from the store as they wanted them, up to the time of the levy, in small quantities. The plaintiff was not in the store very often, but usually passed the store on his way to his meals. That the schedule was drawn in 1848, and annexed to and filed with the first mortgage, from which it was taken off and annexed to the second mortgage, and filed with it. The schedule now annexed to the second mortgage was the same that was filed with the first one. All the articles mentioned in the complaint were contained in the schedule. The goods purchased of Coman, Hopkins & Co., in the fall of 1848, had been all paid for. The goods mentioned in the schedule were of the same kind and nature as those mentioned in the complaint. About $330 to $340 of the goods taken by the defendant came from Coman, Hopkins & Co., and the balance, nearly all from Edgell, the plaintiff. When the schedule was taken from the first and annexed to the second mortgage, there was added to it "1 pair Fairbanks' patent floor scales, 500 lbs. cheese."

The defendant's counsel moved for a nonsuit on several grounds,

which are mentioned in the opinion of the court. The motion was overruled by the judge, who, at the request of the counsel for the plaintiff, submitted to the jury as a question of fact, whether the plaintiff had repelled the presumption of fraud arising from want of immediate delivery, and actual and continued change of possession, by making it to appear that the mortgage was made in good faith, and without any intent to defraud creditors or purchasers. The judge also submitted to the jury the following question in writing, viz.: "Was the mortgage to the plaintiff by Bostwick intended to hinder or delay the creditors of Bostwick in the collection of their debts?" And the judge instructed the jury, that if they found the above question of fact for the plaintiff, they would of course answer the question submitted to them in writing, in the negative; if for the defendant, they would answer it in the affirmative.

The jury found a verdict for the plaintiff, and that the value of the property was $700. And they also answered the question submitted to them by the judge in writing in the negative. The court thereupon ordered the case to be reserved for consideration and argument, and that a case should be made accordingly. The case was brought to argument at a special term in Monroe county, on the 11th May, 1850, and on the 15th of the same month judgment was rendered on the verdict for the plaintiff. The defendant appealed.

*C. Tucker,* for the appellant.

*E. Griffen,* for the respondent.

*By the Court,* WELLES, J. After the evidence was closed, the defendant's counsel moved for a nonsuit, upon the following among other grounds: That the chattel mortgage under which the plaintiff claimed, was fraudulent in law and void, in permitting the mortgagor not only to retain the possession and enjoyment of the property, but also to sell the same; and in assuming to mortgage property which Bostwick might put into the store after the giving of the mortgage; and also by reason of its being

a general mortgage of all groceries, &c. without a particular description; and that the mortgage created a trust for the use of Bostwick. The circuit judge declined to nonsuit the plaintiff, and put the case to the jury on the questions whether the plaintiff had repelled the presumption of fraud arising from want of immediate delivery and actual and continued change of possession of the goods mortgaged, by making it appear that the mortgage was made in good faith, and without any intent to defraud creditors or purchasers; and whether the mortgage was intended to hinder or delay the creditors of Bostwick.

If the question was upon the mortgage alone, aside from the provisions at the end of the schedule annexed to it, I should think the nonsuit was properly refused. The instrument, without reference to those provisions, was an ordinary chattel mortgage, containing stipulations for the benefit and security of the mortgagee, none of which, that I am aware of, have ever been regarded as contrary to law; and the objections to it growing out of the evidence, and relating to the intention of the parties, were purely questions of fact for the jury. (*Smith & Hoe* v. *Acker*, 23 *Wend.* 653.)

The schedule or inventory of property annexed to the mortgage, however, contained the following clause: " Said party of the first part not to sell any of said goods upon credit. If any of the said goods are sold upon credit, that shall be sufficient cause of forfeiture of the within mortgage, and entitle the said Edgell to treat the same accordingly, at his election." This, it seems to me, must be taken as part and parcel of the mortgage, and as qualifying its effect. Without the schedule, the mortgage was a nullity, as there was no property but that enumerated in the schedule, upon which it could operate. In taking the mortgage, the plaintiff took with it the schedule and the stipulations and provisions connected with it. Taking both papers together—the mortgage and schedule—I think the agreement fairly to be deduced is, that Bostwick, the mortgagor, was at liberty to sell the goods, provided he sold for ready pay and not upon credit; and that he might sell upon credit, subject to the plaintiff's right to object to such sales, which he might or

might not exercise, at his election. I am aware that the mortgage contains a provision allowing the mortgagee to take possession in case the mortgagor or any other person should attempt to sell the property. If this conflicts with the schedule, I think it must give way to it, as the mortgage is wholly dependent upon the schedule for its vitality.

The question then is, whether the transaction as it appears upon the face of these papers, as thus interpreted, can be sustained. I am clearly of the opinion that it cannot.

In *Wood* v. *Lowry* (17 *Wend.* 492,) where goods were furnished by a merchant in town to a merchant in the country, to enable him to carry on his business in his own name, and he took a chattel mortgage on the goods as security for their payment, and the mortgagor took the goods into the country and proceeded to sell them in the usual course of business, it was held that they were liable to execution in favor of any other creditor, notwithstanding the mortgage. It is said that this case, with several others decided by the late supreme court, previous to the decision of *Smith & Hoe* v. *Acker*, has been overruled by the latter case. That all the doctrines laid down in those cases are overruled, I deny. They are still, in my judgment, good authority on the questions they decide, excepting only so far as they have been overruled by the case of *Hoe* v. *Acker*. As I understand that case, the judgment of the supreme court was reversed upon the single point that the question of fraudulent intent should have been submitted as a question of fact to the jury. So far, and so far only, I believe it has been regarded as authority, and followed. There was no objection to the form of the mortgage in that case; but the circuit judge held as matter of law that the reasons for not delivering possession of the property mortgaged, were insufficient; and that the mortgage must therefore be taken and deemed as fraudulent and void by reason of the statute. The court for the correction of erors held that the sufficiency of those reasons was a question of fact, which the circuit judge should have submitted to the jury, and therefore reversed the judgment of the supreme court. But where the illegality of the transaction stands out upon its face, upon the

Edgell *v.* Hart.

very papers under which the plaintiff claims title, as I think it does in the present case, it becomes a question of the legal construction of the papers, and upon that question there is nothing to submit to the jury. This must be so ; otherwise, if the mortgage contained an express declaration that its sole object was to hinder or delay creditors, and to protect the property from executions, for the benefit of the mortgagor, the court would have no right to interfere, and the question must be submitted to the jury. I confess I am unable to distinguish this case in principle from the case of *Wood* v. *Lowry*, (*supra*.) Bostwick had the right secured to him, if the transaction is to be upheld, of selling the goods, provided he sold for ready pay, without restriction of price or quantity, and without being under obligation to apply the proceeds to the payment of the plaintiff or any other creditor. He might sell every dollar's worth and put the money in his pocket, and set all his creditors at defiance, so far as the ordinary remedy for collection of debts by judgment and execution is concerned. This power in a debtor is not to be tolerated. Chattel mortgages are regarded with suspicion, on account of the ready means they afford to debtors, of covering their property from the reach of their creditors. They ought never to be held valid where their object appears to be any thing beyond a fair *bona fide* security for a just debt. That is their only legitimate object and office. Benefit to the mortgagor is no part of their theory. In their results, debtors may be benefited by obtaining credit through their means ; but still their primary object is the security of a bona fide debt, and nothing else. As this case presents a violation not only of wholesome and sound policy, but, as I conceive, of well settled law, the judgment of the special term should be reversed for the error of the circuit judge in refusing a nonsuit. It therefore becomes unnecessary to discuss the other points raised upon the argument.

The judgment of the special term should be reversed, and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, June 3, 1851. *Welles, Selden* and *Johnson*, Justices.]