## FORD and ROCKWOOD *against* WILLIAMS.

In an action by the mortgagee of chattels, for their seizure upon an execution against the mortgagor, it is not competent for the defendant, with a view to impeach the validity of the mortgage, to prove that subsequent to its execution the mortgagor, while in possession of the property, but without the knowledge or privity of the mortgagee, executed other incumbrances upon it which were fraudulent.[1]

---

[1] See *Miller* v. *Lockwood*, 32 N. Y. 293. *Conway* v. *Richmond*, 22 Hun 369 *Hastings* v. *Parker*, 22 Alb. L. J. 115. *City Bank* v. *Westbury*, 16 Hun 458.

Ford *against* Williams.

Where the mortgagor of a stock of goods is allowed by the mortgagee to retain and sell them at retail, at his discretion and for his own benefit, the mortgage is fraudulent as against creditors.

An attorney who merely issues an execution and communicates to the sheriff the directions of his clients to seize thereon specified property is not liable as a trespasser, although the seizure is wrongful.

Nor is he liable for the tortious seizure where, pursuant to the authority and directions of the plaintiff in the execution, he executes in the name of the latter a bond indemnifying the officer against the seizure. [2]

And where the attorney, as the agent of the party to the execution, executed to the sheriff, in the name of the party, an indemnity under seal where his authority to do so was by parol; *Held,* that the attorney was not liable as a trespasser for the illegal seizure, although the indemnity was not valid as the specialty of the party.

Such an instrument is obligatory upon the principal as his simple contract, it not being required by law to be under seal. [3]

APPEAL from a judgment of the supreme court. The action was for taking and carrying away personal property. The trial took place at the Wayne circuit, in December, 1849, before Mr. Justice Selden. Samuel Sutherland, the owner of the property, mortgaged it to the plaintiffs on the 11th October, 1848, to secure them as his endorsers upon a note for $205.78, payable on the 19th December following; and the mortgage was duly filed. Sutherland was a merchant at Newark, Wayne county, and the property was hardware and other goods, the stock of a country store, and some household furniture. A judgment and execution had been obtained against him, to pay which the note was made and endorsed for his accommodation by the plaintiffs and discounted at a bank. The plaintiffs paid the note at maturity, except about eighty dollars, which, as Sutherland testified, he paid. Sutherland continued to sell the goods from the store after the mortgage to the plaintiffs, but he did not, as he testified, sell on credit, except in a single instance; and he swore that the money received on such sales, except ten dollars, was the same which he paid towards

---

[2] Otnerwise, if he refuse to state what were his client's instructions, and challenge a suit against himself. *Ford* v. *Williams,* 24 N. Y. 359.

[3] See *Hill* v. *Miller,* 76 N. Y. 32. *Arnold* v. *Bernard,* 8 Abb. Pr. (N. S.) 116.

Ford *against* Williams.

taking up the note which the plaintiffs had endorsed. The defendant proved the declaration of one of the plaintiffs, to the effect that Sutherland had not paid anything on the note, but had applied the proceeds of the goods which he sold on other debts or for other purposes, or lived upon it; and there was other evidence tending to show that Sutherland, after giving the mortgage to the plaintiffs, continued to sell goods as before from the store and to charge the sales on his account books.

On the 14th November, 1848, John and Alexander Morrison, of Troy, obtained a judgment in the supreme court against Sutherland for $611.86, and, on the 11th December following, execution was issued thereon to the sheriff of Wayne county, who, in January thereafter, seized the goods in the store, which had been mortgaged to the plaintiffs, and sold them to satisfy the judgment. The defendant in this action was the attorney of the Messrs. Morrison in obtaining the judgment and issuing execution, and plaintiffs sought to charge him as a trespasser on account of his alleged agency in procuring the goods to be seized by the sheriff. His defence consisted in a denial that he had interfered so as to render himself responsible if the seizure was unjustifiable, and in his allegation that the plaintiffs' mortgage was fraudulent as against the creditors of Sutherland. The defendant, on the question of fraud, offered in evidence three other chattel mortgages, executed by Sutherland upon the same property mortgaged to the plaintiffs, dated the 10th, 11th and 12th November, 1848, and offered to show that Sutherland did not owe the debts which they purported to be given to secure, but that they were "fictitious debts," and that the mortgages were given without the knowledge of the parties named as mortgagees. The plaintiffs' counsel objected to this evidence and it was excluded by the judge; the defendant excepted. The defendant also offered to show that after the sale by the sheriff, there was sufficient of the property mortgaged to the plaintiffs left to satisfy

their debt against Sutherland. The evidence was excluded on the objection of the plaintiffs' counsel and there was an exception.

The evidence to establish the defendant's liability was the testimony of the deputy sheriff, and the written instrument hereafter mentioned. The deputy swore that he received the execution from the defendant, who directed him to levy upon and sell the property in question, but that the defendant at the same time said he had a letter from the plaintiffs in the execution directing him to have that property levied on; that the plaintiffs directed him to give the instructions which he had given. The witness required a bond of indemnity, and the defendant gave him an instrument executed for that purpose, which was given in evidence. It was in the form of a bond of John Morrison and Alexander Morrison, in the penalty of $1000. It was dated January 13, 1849, reciting the issuing of the execution of the Messrs Morrison, and that the sheriff had been directed to levy on the property in question; and was conditioned to be void if the Messrs. Morrison should save harmless and indemnify the sheriff and his deputies for levying on the property The names of John Morrison and of Alexander Morrison. with seals opposite their names, were subscribed by the defendant, who added to each name "by T. R. Williams, his attorney." The defendant produced and proved a letter from Messrs. Morrison to himself, dated May 3, 1849. It stated that the writers had taken advice of a lawyer in Troy, which, they said, coincided with the defendant's advice: "We therefore," it proceeded, "direct you to indemnify the officer and attach the property." After some further details, not material to be stated, it concluded: "In the above we wish to be understood that you have our authority for indemnifying." There was some other evidence tending to show that the defendant gave the direction to levy on this property, as the instructions of the plaintiffs in the execution.

Ford *against* Williams.

The judge charged the jury that all the persons con-cerned in the illegal taking of property were liable in tres-pass, and that the defendant would, therefore, be liable if he directed the sheriff to levy on this particular property that the giving an indemnity to an officer against the con-sequences of the seizure would be equivalent to a direction to seize the property, and would make the indemnitor liable, that the defendant in giving the directions to the deputy sheriff did mention the instructions of his clients to the same effect, yet if he also spoke in his own name, as likewise directing the property to be levied on, he would be liable if the seizure was illegal. This position was execpted to by the defendant's counsel. He also instructed the jury that if the defendant executed the bond to the sheriff, it being under seal, without authority to him by a sufficient power under seal, he went further than his duty as attorney strictly required, and rendered himself liable for the wrongful acts done by the sheriff, by his direction, under the alleged indemnity. The defendant excepted to this position.

On the question of fraud the judge charged that the mortgage was presumptively fraudulent and the burthen of showing it honest was on the mortgagees; that they must show a good consideration and something more; that if the sales made by Sutherland were made in good faith and with the concurrence of the plaintiffs, and the object of them was to raise money to pay the debt secured by the mortgage, the act of selling would not be fraudulent. To this position the defendant excepted. The defendant re-quested the judge to charge upon several propositions, and among others "that the attorney is not responsible for sim-ply communicating instructions which he is directed by his client to communicate to an officer in regard to what pro-perty shall be levied on;" and also "that, where the mort-gagee of goods allows the mortgagor to retain the goods and proceed to sell the same in the usual course of business, they are liable to execution in favor of any other creditor, notwithstanding the mortgage," and the judge remarked

3 KERN.—37

that he had already charged the affirmative of these propositions. After retiring to deliberate, the jury came into court declaring themselves unable to agree; and, upon being inquired of by the judge, they stated that their difficulty was "as to the liability of the defendant in this action as an attorney of this court." The judge then charged them further as follows: "If the defendant executed the bond of indemnity introduced in evidence in the name of his clients, without sufficient authority to do so, he thereby rendered himself personally responsible to the plaintiffs for any wrong done by the sheriff in consequence of such indemnity being given." The defendant again excepted. Verdict and judgment for the plaintiffs. The general term in the 7th district affirmed the judgment and the defendant appealed.

*N. Hill, Jr.*, for the appellant.

*B. D. Noxon*, for the respondents.

DENIO, C. J. The judge was, in my opinion, correct in excluding the evidence offered, to show that Sutherland, after giving the mortgage to the plaintiffs, executed mortgages upon the same property to other persons, which were fraudulent as to his creditors. These subsequent mortgages were given about a month after the plaintiffs' mortgage, and it was not offered to be shown that they had any knowledge of them. The rule contended for by the defendant's counsel would place it in the power of a debtor, who had in entire good faith given a security to a creditor for an honest debt, by his own act to create evidence which might invalidate the security without any fault on the part of the creditor. The only influence which such evidence could have upon the minds of the jury would be to create a belief that as the debtor was shown to be capable of a dishonest act, very probably his transaction with the plaintiff was induced by the same bad disposition. This would not be a legal inference, but a bare conjecture. Cotemporaneous acts of the parties to a conveyance alleged to be fraudulent may, in

Ford *against* Williams.

general, be shown; but these subsequent mortgages were not connected as to time with the plaintiffs' security. I do not perceive that the fact that Sutherland was permitted to sell the goods by retail has any influence upon this particular question. That circumstance did not aid him in making the fraudulent mortgages. Had he even been out of posses-sion, he could have again mortgaged the equity of redemp-tion for an honest purpose, and the subsequent mortgagee could have redeemed the prior mortgage. The *possession of Sutherland, and the power of disposition in other respects which he was allowed to exercise over the property, pre-sented another question, but did not tend to render his fraudulent conduct, in giving the other mortgages, evidence against the plaintiffs.

The defendant clearly had a right to show, upon the question of fraud, that the value of the goods mortgaged to the plaintiffs was disproportioned to the amount of their debt. It might tend, with other circumstances, to show an intention to hinder and embarrass the other creditors of Sutherland by covering up his property. But I do not think the evidence, which the judge excluded, could have been understood to be offered with that view. · The offer was to show that the sheriff left goods enough, which were included in the plaintiffs' mortgage, to satisfy their debt. The apparent object was to show that the plaintiffs were not injured, because they might still realize the amount of their demand out of the goods which remained. It could not, I think, have occurred to the judge that the motive was, as now argued, to show the aggregate amount of the property levied on, with a view to contrast that amount with the debt intended to be secured. It was not contended on the argument that the evidence was material for any other purpose; and it clearly was not. The plaintiffs' mortgage was forfeited before the seizure by the sheriff, and they had become the owners of the property embraced in it.

This court has decided that where, upon the giving of a chattel mortgage on the stock of goods in a store, the mort-

gagor is permitted, by the assent of the mortgagee, to continue to sell them by retail at his discretion for his own use, as he had done before, the mortgage is fraudulent and void against the creditors of the mortgagor. (*Edgell* v. *Hart*, *Court of Appeals, December term*, 1853, *affirming the same case reported in* 13 *Barb.*, 380.) There was considerable evidence in this case to bring it within the principle of that decision; but Sutherland's testimony tended, in some degree, to show that his sales, subsequent to the mortgage, were made in pursuance of an arrangement between the parties that Sutherland might dispose of the goods for cash, and apply it on the plaintiffs' debt, and that he applied the money in that way. The judge was requested to charge in accordance with the doctrine upon the subject, which we laid down in *Edgell* v. *Hart*, and he responded to that request by saying that such was the effect of the charge which he had given. The defendant, therefore, had the benefit of the rule to the extent of having it laid down correctly to the jury. If they failed to find in accordance with it, the error is one of fact, which we cannot review.

The judgment ought, therefore, to be affirmed, unless an error was committed in that part of the charge which related to the defendant's complicity in the alleged trespass. The defendant was allowed the benefit of the position that he would not be responsible for conveying to the sheriff the instructions of his clients to seize the goods in question, if he did nothing more. That was the view of the judge, and in that I think he was correct. In general, all who aid and abet the commission of a trespass are liable jointly or severally, at the election of the party entitled to the action. But where one acts only in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass he is not liable, though what he does may aid another party in its commission. The rule was carried far enough when it was held that the sureties, in an indemnity bond, of a party wishing to procure property to be seized upon legal process.

Ford *against* Williams.

were responsible in trespass, the seizure being unwarranta-
ble (*Davis* v. *Newkirk*, 5 *Denio*, 92). I do not affirm that
that case was incorrectly decided, for there was force in
saying that all the obligors in the bond might be held
to have requested the seizure; but the principle clearly
would not extend to the scrivener who drew the bond, or
the attorney who made out the execution, though they
knew the purpose to which they were to be applied. Upon
the same principle which shields the attorney who simply
conveys to the officer the instructions of his clients, I should
hold that where the party directing the seizure finds it con-
venient to empower his attorney to execute the instrument
of indemnity in his name and behalf, as his agent, the
attorney so executing as agent would not be a party to the
seizure, so as to make him a trespasser, if it should turn out
to be unwarranted; and such I understand to have been the
view of the judge. He assumed that the act of executing
the bond as attorney would be harmless, provided the de-
fendant had sufficient authority from the principals. But
the instrument which the defendant did execute was under
seal, and his authority was an unsealed letter. Clearly he
could not, under that authority, execute a specialty, and
he therefore exceeded his authority. The judge instructed
the jury that if he had gone beyond his authority in this
regard, that circumstance alone made him liable, if the
plaintiffs in other respects were entitled to recover. Now
although he could not, under the letter which his clients
wrote to him, bind them by a covenant, the power was
ample to enter into a written promise, on their behalf, to
indemnify the sheriff; and the paper which he signed in
their names sufficiently expressed the consideration to render
the agreement valid without regard to the seal; and this
court has decided that in such cases the instrument is valid
as a simple contract, though executed under seal, provided
the law did not require the particular contract or convey-
ance to be a sealed instrument. (*Worrall* v. *Munn*, 1 *Seld.*,

229.) The question then arises whether the fact that the attorney used a seal, when he had no right to do so, and when that circumstance did not impair the contract which he made—that contract being after all the precise one which he was authorized to make—so changes his relation to the seizure as to render him liable to the plaintiffs as a party aiding or abetting its commission. I am of opinion that it does not. If he would not have been liable had he executed the paper in form as a simple contract, or if, executing it as he did, his authority had been under seal, I do not think the formal defect in the execution of the paper will make him responsible. I do not perceive that this circumstance in any way affected the plaintiffs. It is merely a question between the defendant and the sheriff. The latter did not get an instrument of the precise legal character which he supposed he received, but the one he did get gave him a remedy against the principals substantially the same as though it had been a specialty. The principle upon which an indemnitor is made liable in those cases is, that the instrument is equivalent to a request to make the seizure. This instrument concluded the plaintiffs in the execution from denying that they requested the seizure. It conveyed to the sheriff their request to make the levy as effectually as though the seals had not been affixed to it. The defendant was simply their agent to put that request in writing in their names, and this he effectually did, though not in the exact legal form which they contemplated. If I am correct in this view, the judgment ought to be reversed and a new trial granted.

Comstock, J., having been counsel in the cause, took no part in the decision.

Judgment reversed.