Freeman, J.,
delivered the opinion of the Court.
The question presented in this ease is, Whether the deed of trust, by C. H. Ebbert & Co. to Pritch-ard, is fraudulent and void, as to creditors, by reason of the stipulations on its face?
The conveyance was of a stock belonging to said firm as liquor dealers in the city of Memphis, and conveys “all our slock in trade, appurtenances and fixtures thereunto belonging, embracing all liquors of every kind and description, with all goods, wares, and merchandize, with store fixtures, appurtenances and conveniences thereunto belonging, including all our book accounts of every kind, which were then in control of said firm, and such as are now contained in stores *155 342 and 344, Second street, Memphis, Tennessee, either-therein or wherever to be found in said old place of business, or any new place, and the old stock or any new stock of the original firm of C. H. Ebbert &. Co. (giving names of members of firm), composed of said present parties, with any new member or members, together with their lease or leases, stock, fixtures, etc., aforesaid, with their custom and good name,; and each and every and all the aforesaid, etc.”
This conveyance was made to secure the sum of $10,500, evidenced by seven promissory notes, the first three for $2,000 each, due respectively at thirty days, sixty days, and three ' months; the other three for $1,000 each,' due respectively at four, five, and six months after date, and the seventh note due at seven months for $1,500, all bearing interest from date. It was agreed if these notes were paid at maturity the-deed was satisfied, and the trustee to reconvey the property to Ebbert & Co. If they failed to pay the notes, or any one of them, at maturity, then the trustee was empowered to take the property conveyed, or-any part of it, or all of it, into his possession and control, and sell it at thirty days’ notice, for. cash, and appropriate proceeds, first, to the expenses of trust; second, to the satisfaction of the debts, or so-much as remained unpaid, whether due or not, and the balance of said debts, if not paid by proceeds of sale, be subject to immediate suit; thirdly, the balance, if any, to be paid to Ebbert & Co. The parties also waive the necessity of giving a bond on-part of trustee, or filing an inventory of sale.
*156 ’It was ‘further provided in said deed “that C. H. Ebbert, now conducting and managing the liquor business aforesaid, and carrying on and having possession of the property under the firm name of C. H. Ebbert & Co., may ‘keep possession of 'the same, carry on and continue the business, with the express understanding that none of the fixtures, appurtenances, appendages and conveniences, and lease and license necessary for carrying on the business, are to be disposed of, unless subject to the stipulations here-inbefore mentioned.
It was further agreed that C. H. Ebbert & Co. might collect the accounts due the firm, and make such expenditures as should be necessary to carry on the business, and those only. It was further agreed 'that should any new member be taken into the firm, the lien and trust was .to remain in force, and be over the new firm, and stock as aforesaid until discharged. “It was especially agreed that C. H. Ebbert & Co. might replenish their stock from time to time as may be necessary to the proper and successful management and carrying on the business, subject to all the provisions of the trust, however, and subject to the further provision, that if they failed to make proper application of the proceeds of sales or collections of accounts, to the satisfaction of the said notes, or any matter in good faith, the trustee, Pritch-ard, was authorized immediately to take possession and enforce the trust on failure to pay the notes.
It may be assumed that there was' no fraud in fact on part of the beneficiaries in this trust, in its *157 Inception.. The question then is, Can such a conveyance be held valid by the rules and policy of the law, as being fraudulent in law,, or more properly,, as in violation of sound policy, and the spirit, of. our-statute of frauds, as well as the general principles of law against fraud, or conveyances that reserve a benefit either directly or indirectly to the vendor or conveyor, as against or to the prejudice of the rights of' creditors ?
The statute of 13th Elizabeth, against fraudulent conveyances, enacts in substance that “for avoiding and abolishing of feigned, covinous, and fraudulent feoffments, etc., which are devised and contrived of malice, fraud, covin, collusion, or guile, to the end, purpose, and intent to delay, hinder, or defraud creditors and others of their just and lawful actions, etc., not , only to the let or hindrance of the due course-of law and justice, but also to the overthrow of all plain dealing, bargaining, etc., between man and man. Be it therefore declared, etc., that all and every feoffment, etc., made to or for any intent or purpose before declared and expressed, shall be from henceforth deemed and taken only against the person, etc., whose actions shall or might be in any wise disturbed, etc., to be clearly and utterly void.”
Our own statute of frauds of 1801, ch. 25, Sec. 2, is, in substance, the same as that of 13th Elizabeth, and as given in the Code, Sec, 1759; is as follows : “ Every gift, grant, conveyance of lands, tenements, hereditaments, goods or- chattels, or any rent, common or profit, out of the same, by writing or- *158 •otherwise; and every bond, suit, judgment, or execution, had, made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, etc., shall be deemed and taken only as against the person, his heirs, successors, executors, etc., whose debts, etc., by such guileful and covinous practices as aforesaid, shall or might be in any wise disturbed, hindered, delayed, or defrauded, to be clearly and utterly void.”
In “Twyne’s case,” the leading case under the statutfe of Elizabeth, it was said, “And because fraud and deoeit abound in these days more than in former times, it was resolved in this case by the whole court that all statutes against fraud should be liberally and beneficially expounded to suppress the fraud.” And as quoted by Chief Justice Gibson, in case Dorrick v. Reichemback, 10 Searg. and R., 90: “ These statutes of Elizabeth produce the most beneficial effects by placing parties under a disability to commit fraud, in requiring for the characteristics of an honest act such circumstances as none but an honest intention can assume; and they seem to have been expressed in general terms purposely to leave room for a large interpretation by the judges, who, in accordance with the spirit rather than the words, have engrafted on them such artificial presumptions and legal intendments -as are ordinarily subjects of judicial construction. See McKibben v. Martin, Am. Repts, vol. 3, 590, and such has been the course of decision in the courts of England and this country up to the present period.
*159 We do not deem it proper to go into a review of the numerous cases cited by counsel on the question presented. In the case of Doyle v. Robert L. Smith, 1 Col., 20 — a case having much resemblance to the present one — the 'court says: “It is a settled rule of decision in such cases, that any provision which materially hinders and delays creditors in the assertion of their rights, especially when coupled with a reservation of any part of the property to the grantor in the deed, makes the whole void. No permanent, lasting, and material benefit can be secured to him without vitiating the whole conveyance.” And we add, that any conveyance that puts the property of the debtor in the name of a third party, so far as the legal title goes, yet leaves it in his possession, and under his control, with the right to continue' to use .it in trade, sell and dispose of ’it, as before the conveyance, laoJcs the essential elements to sustain such a conveyance as against a creditor; that it shall be bona fide, and contain no reservation or benefit in favor of the grantor, as against the rights of his other creditors. In Troyne’s case, the “elements of fraud were, that Pierce,” the debtor and grantor of the property, “continued in possession of said goods, and some of them he sold; and he shore the sheep, and marked them with his own mark.” See case Smith L. cases, vol. 1, case 1.
In this deed it is expressly stipulated “that C. H. Ebbert, now conducting and managing the liquor business aforesaid, and carrying on and having possession of the property, under the firm name of C. H. Eb- *160 bert & Co., may keep’ possession of the same, and caray on said business — continue the business, with the express understanding that none of the fixtures and appurtenances, appendages and' conveniences, and lease and license, necessary for the carrying on of the business, are; to be disposed of, unless subject to the stipulations hereinbefore mentioned.” In other woi’ds, the said C. H. Ebbert & Co., by the partner who was then engaged in transacting ^the business, should continue to sell and dispose of the stock of liquors conveyed in the deed to Pritchard, the trustee, and, as shown by other parts of the deed, purchase other stock; in a word, the firm was to continue the liquor business themselves, as before the conveyance, except the legal title to the business should be in the name of the' trustee. It is true, on failure to pay the notes, or any one of them, at- maturity,, the trustee was empowered- “to take the property conveyed, or any part of it, or all of it, into his possession and control, and sell it after thirty days, and appropriate the proceeds to the payment of the debts secured,” but- until the first note fell due, or default was made, the property could be sold by Ebbert & Co. at will; in fact, it was contemplated it should be sold by them,, and the proceeds were at their disposal. If they, or C. H. Ebbert, chose to appropriate them faithfully to the debts secured, all very well; but .if he chose not tp do so, then he or the firm might keep every dollar of the proceeds for their own purposes, and there is no remedy against such appropriation. In the mean time the stock of liquors is se *161 cured and protected from the demands of other creditors by being in the name of the trustee, of record,, so far as legal title goes, yet practically is secured to the use and benefit of Ebbert & Co., .just as before the conveyance; that is to be used by them to carry on the business of liquor dealers, entirely unaffected by the conveyance to the trustee, so far as the sale and disposition of the stock is concerned, the proceeds to be received by the same parties as before the conveyance, with a contract as found in the deed, to pay and discharge these debts, and on failure to do so, the right on the part of the trustee to take possession of what stock might be on hand and sell, paying proceeds on the secured debts. Admitting that there was no specific intent to defraud any particular-creditor, or no actual fraud in fact, yet here are such facilities for fraud, contracted for on the face of the deed, that it must be held as wanting in legal good faith on the plain principle that every reasonable man-ís presumed to intend the probable consequences of his own acts. And besides, there is clearly a benefit contracted for to the grantors on the face of the deed, and a prejudice to the rights of other creditors. As to the first, in being able to keep their stock in trade covered up from execution, or attacking creditors, while they continued to use the same in defiance of their demands, for profit, with means of appropriating the proceeds to their own use. On the other hand, if the business had been conducted without .the deed of trust, at any day it was subject to the demands of creditors who might seek to enforce their debts. Such *162 a conveyance, we do not think, can be permitted to stand, consistently with the letter or spirit of our statute of frauds, and- the course of decisions made in construction and application of the same. Numerous cases are referred to by counsel in support of this view of the case, a number of which we have examined, and think they contain the sounder view of the question. See Griswold v. Sheldon, 4 N. Y., 501; Edgell v. Hart, 9 N. Y., 2, 6; Ford v. Williams, 13 N. Y., 583.
The reasoning of the Supreme Court of Ohio, in the case of Collins v. Myers, 16 Ohio, 547, presents the questions raised in this case in a conclusive light. The Court says, “A continuance of possession, with a power of disposition and sale, either express or implied, is quite a different thing from mere retention of possession. The object of a mortgage is to obtain a security beyond a simple reliance on the honesty and ability of the .debtor to pay, and to guard against the , risk of all the property of the debtor being swept off by other creditors, by fastening a specific lien upon that covered by the mortgage. Such a mortgage as this, then, is no security, so far as the debtor is concerned, and is of no benefit, except as a ward to keep off other creditors. To hold such a mortgage valid, would enable a debtor to do business upon a capital within the limits of the mortgage debt, at the will of the mortgagor, protected from all claims of other creditors, and in the present instance, upon an indefinite amount of capital, as the mortgage is to extend to all additions to be made. to the stock *163 in trade.” The court adds, “To hold such a mortgage valid, would furnish a complete shelter under which a man could carry on trade for his own benefit, completely protected against the payment of his debts, and placed beyond the reach of creditors.”
In reference to the provision in this deed, that “ C. H. Ebbert & Co. may replenish their stock from time to time, as may be necessary to the proper and successful management and carrying on of the business, subject to the provisions of this trust.” We adopt the language of the case above quoted, “that in this case there is no specific lien, but a floating one, which attaches, swells, and contracts, as the stock in trade changes, increases, and diminishes, or may wholly expire by entire sale and disposition, at the will of the mortgagor, such a mortgage is no certain security upon specific property; all depends on the honesty and good faith of the debtor, and who might dispose of it to a creditor at will to satisfy a debt. We see no reason why a creditor might not seize it against his will for the same object. Ibid 554.
It is insisted, however, that the additions to the stock became subject to the trust, and the provision that enables the trustee to take possession and sell all on hand on default, gives the trustee such control over the property conveyed as to meet the difficulty suggested. We cannot assent to this, for in the meantime the debtor may have sold two-thirds, or even all, the' stock on hand — may have used the proceeds for his own benefit, and the trustee can only take possession after the mischief is done by failure to ap *164 propriate to the debts secured by the deed of trust. Without going further into the authorities presented in briefs, it suffices to say that we hold that the deed of trust in question cannot be sustained, on the plain principle that it does hinder and delay creditors in the enforcement of their claims, not by a bona fide appropriation of the property of the debtor to the payment of his preferred creditor, which would be allowable, but by placing it in his own possession and control, with absolute power of disposition, and the 'means of using the proceeds for his own benefit, as before conveyance, and that such stipulations are inconsistent, not. only with the idea of a mortgage, but tend inevitably to give a fraudulent advantage to the debtor over his other creditors, while his property is protected by being in the name of a trustee.
Two cases have been referred to as holding a different view of the law from that expressed in the above opinion: the first, the case in 3 Col., 285. That case is, however, clearly distinguishable from this in the fact that the trustee took immediate possession of tlie goods, and was to sell them for the bénefit of the creditors. Here the assignor retains possession,, with power to sell and reinvest in other goods and carry on the business as before the assignment, only he undertakes to pay the debts secured by the assignment. He was under obligation to pay these debts, before, and the obligation was but little if any stronger after making the deed.
The other case is that of Hickman v. Perrin et als, 6 Col., 135, which was decided on the authority *165 of a ease in 7 Michigan, 519, and of Hilliard on Mort., 2, 402. The judge who delivered the opinion in that ease puts the decision on two grounds: first, that the loan by Parkhurst, the first mortgagee to the firm of Lewis, Perrin & Co., was bona fide; and second, the creditors appearing before the court were all subsequent in date to the making of the deed of assignment. We cannot well see how the fact that the creditors were subsequent creditors could have any bearing on the question involved in that case, as we think, by the great weight of authority, the deed was fraudulent on its face, and notice of the deed by' registration could only be notice of a void deed, one fraudulent as to all creditors, and therefore not in the way of any creditor. The fact that the creditor was subsequent to the registration of the deed would have been of importance, perhaps, had the deed been attacked as a voluntary conveyance or assignment, as in case of Martin v. Oliver, et als, 9 Hum. 565.
The argument of Judge Shackleford in the ease in 6 Col., “that to hold that a merchant cannot mortgage his goods without closing his doors, would be to hold that no merchant could mortgage his stock,” is one that we have not been able to appreciate the force of. It seems to us to be equally contrary to sound principle, as well as policy, to hold that a merchant may transfer and convey his stock of goods, so that the title will be in the assignee for the benefit of his creditors, and at the same time continue to carry on the business as if no such assignment had *166 been made. In other words, we can see no reason why the title should be in one party by such an assignment, and the actual beneficial use in the assignor-as before, and that such a transaction' should be held good in case of a merchant, when in case of a farmer assigning his crop, it would be held as conclusive evidence of fraud, and void. The rule we lay down in this case only requires that there be a bona fide and certain appropriation of the property for the benefit of a creditor; not a colorable one in which the-creditors have only a contingent interest, dependent on. the good faith of the assignor, while the assignor-himself has an equally certain interest secured to him;, that is, he may carry on his business as before, and! reap all its profits, subject only to the danger of having what he has not used for his own benefit taken by the trustee and sold, when it is ascertained he has. so used it. We need not argue this question at length. It suffices to say that we see no necessity for adopting a rule in such cases that shall enable a merchant to assign his property to a trustee for the benefit of his creditors, and at the same time continue his business, and his doors unclosed, as seems to have been the idea of Judge Shackleford in the above opinion. We simply disapprove of the principle of the case, and overrule it, so far as it conflicts with, the views herein expressed.
The result is, that the decree of the Chancellor-will be affirmed, defendants paying costs of court below and of this court.