■ ART CAPITAL GROUP, LLC, et al., Respondents, v BETH SARA NEUHAUS, Appellant. [896 NYS2d 35]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered December 1, 2008, which denied defendant's motion to dismiss the complaint, reversed, on the law, with

costs, and the motion granted. The Clerk is directed to enter judgment in defendant's favor.

Plaintiffs are in the business of providing financial and consulting services to art owners, for the purpose of enhancing the liquidity of works of art held by individual owners and art galleries. This action stems from the fact that plaintiffs' former employees, Christopher Krecke and Andrew Rose, now compete with plaintiffs through entities they have formed. Three years before this action was commenced, plaintiffs sued Krecke, Rose and their entities, alleging various torts plus claims for declaratory relief and an accounting. In that still pending action, it is alleged, among other things, that Krecke and Rose defrauded and engaged in unfair competition with plaintiffs. All of the instant complaint's seven causes of action, which include aiding and abetting breach of fiduciary duty, fraud and conspiracy to defraud, and aiding and abetting fraud are based upon defendant's role as an attorney retained by Rose for the purpose of starting his new business venture with Krecke. Plaintiffs allege that Krecke and Rose needed to secure the aid and assistance of legal counsel in order to carry out the conspiracy against them. Accordingly, defendant is alleged to have substantially facilitated and advanced the Krecke-Rose conspiracy to defraud and unfairly compete with plaintiffs.

The issue on this appeal is whether the complaint sets forth any basis for defendant's liability for the alleged conduct of Krecke and Rose. "In general, all who aid and abet the commission of a trespass are liable . . . But where one acts only in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass he is not liable, though what he does may aid another party in its commission." (*Ford v Williams*, 13 NY 577, 584 [1856].)

Moreover, it is recognized that public policy demands that attorneys, in the exercise of their proper functions as such, shall not be civilly liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients (*Hahn v Wylie*, 54 AD2d 629 [1976]). As to defendant's specific conduct, plaintiffs allege that she gave Krecke and Rose indispensable legal advice and counsel, documented and negotiated loan transactions between their competing entities and plaintiffs' current and prospective clients, and provided legal services to secure office space for Krecke and Rose. Guided by *Ford*, we find that plaintiffs' causes of action are not viable because all of the aforementioned acts fall completely within the scope of defendant's duties as an attorney. The five quotes from the complaint cited by the dissent do not warrant a con-

trary conclusion inasmuch as they do not even suggest that defendant acted in any capacity other than as an attorney.

Even apart from *Ford* and *Hahn*, this Court has held that a viable tort claim against a professional requires the underlying relationship between the parties to be one of contract or the bond between them so close as to be the functional equivalent of contractual privity (*Jacobs v Kay*, 50 AD3d 526, 527 [2008], citing *Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417 [1989]). The existence of such a relationship is not alleged here. Moreover, rule 1.2 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0), also cited by the dissent, does not bear upon the sufficiency of plaintiffs' claims. Standing alone, an ethical violation will not create a duty giving rise to a cause of action that would otherwise not exist at law (*Shapiro v McNeill*, 92 NY2d 91, 97 [1998]).

Also, the dissent merely begs the question by invoking Judiciary Law § 487, authority plaintiffs do not cite. That statute provides for criminal and civil liability for an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." (Subd [1].) The "indication of fraud and collusion" discerned by the dissent falls short of an allegation that defendant tortiously acted outside the scope of her role as an attorney. By illustration, the tenor of the complaint is revealed by its following language: "In order to accomplish the aforementioned conspiracy, Krecke and Rose needed to secure the aid and assistance of legal counsel," and "Beth Neuhaus' legal advice and counsel was substantial and indispensable to Krecke and Rose." The "advice of counsel with respect to a client's course of conduct, even if pleaded as 'condonation', does not thereby and without more metamorphose into a cause of action by a third party against that counsel" (*Pearl v 305 E. 92nd St. Corp.*, 156 AD2d 122, 122 [1989]). It is also of no moment that discovery has not been conducted. Plaintiffs have not asserted that facts essential to justify opposition to the motion may have existed but could not be stated (*see* CPLR 3211 [d]).

Plaintiffs' claims of fraud, conspiracy to defraud and aiding and abetting fraud are deficient for an additional reason. The elements of fraud are a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). In this case, plaintiffs do not allege that any misrepresentations were made to them. Concur—Andrias, J.P., Friedman, Buckley and DeGrasse, JJ.

Acosta, J., dissents in part in a memorandum as follows: I believe that plaintiffs have stated a viable cause of action for aiding and abetting a breach of fiduciary duty, and aiding and abetting fraud.

Plaintiffs are in the business of providing financial and consulting services to individual art owners and art galleries. Apart from engaging in art sales, purchases and advisory services, plaintiffs also offer recourse and nonrecourse asset-based loans to individuals, galleries and other businesses, using their art assets as collateral in securing the loan or as a component of the collateral package.

Nonparty Christopher Krecke was an employee of plaintiff Art Capital and served as its chief financial officer and chief operating officer. He also served as the chief financial officer and chief operating officer of plaintiff ACG Credit, and as president of plaintiff Fine Art Finance. Krecke administered the loans for each of ACG Credit's lending clients, as well as managing and developing key banking and credit relationships. Nonparty Andrew C. Rose was a consultant for Art Capital Group, and was managing director of ACG Credit. Rose's employment and consulting arrangement was terminated on December 28, 2004.

According to the complaint, while Rose was consulting for Art Capital, he "started planning to compete secretly against plaintiffs and appropriate ACG Credit's corporate loans and plaintiffs' business opportunities for himself and Krecke." On or about October 2004, Rose formed a company called Art Capital Holdings, Inc., "to provide financial consulting services and established e-mail accounts with 'artcapitalgroup.com' domain names."

After Rose was terminated, Krecke continued his employment with plaintiffs for an additional three months. The complaint alleges that during that time, Krecke helped Rose conceal the efforts of the competing business. Krecke resigned from his employment with plaintiffs on April 1, 2005, and reported for employment with Rose three days later. It is further alleged that during that three-month period, "Krecke and Rose facilitated the transfer of numerous lending clients and prospective clients to Rose's new company."

On or about January 26, 2005, defendant, an attorney, met with Krecke and Rose at her office, and was retained as Rose's legal counsel. It is alleged that she "knowingly and deliberately enabled, assisted, and counseled Krecke and Rose to unfairly compete with Plaintiffs, to defraud Plaintiffs, and to disregard the fiduciary duties they each owed to Plaintiffs." It is further

alleged that defendant "worked on loan transactions with Krecke and Rose with counterparties that were borrowers of, potential clients of, or had signed term sheets with Plaintiffs," assisted in "appropriat[ing] many loan transactions away from Plaintiffs, and otherwise . . . interfere[d] with Plaintiffs' ongoing and prospective business relationships."

The complaint makes specific reference to a loan extended by Rose and Krecke's new company to plaintiffs' largest borrower, Berry-Hill Galleries (BH), in violation of an existing loan agreement between BH and plaintiffs. It alleges that defendant represented Rose and Krecke in the transaction and assisted them in concealing it from plaintiffs by using a shell company, Coram Capital, to receive the loan, removing references to BH's address from the loan documents and concealing the fact that artwork that had already been pledged as collateral to ACG Credit was used to secure the loan. In addition, the complaint alleges that defendant provided unspecified legal services to Krecke and Rose in connection with loans made to three of plaintiffs' borrowers.

The complaint further alleges that defendant concealed her involvement with Krecke and Rose by disclaiming any wrongdoing with respect to certain loan transactions in the ensuing litigation by plaintiffs against Krecke and Rose.[1] Additionally, the complaint alleges that defendant helped to wrongfully divert business from plaintiffs by assisting Rose and Krecke in securing financing with SageCrest, plaintiffs' lender.

Plaintiffs brought the instant action in June 2008. In August, defendant moved, pre-answer, to dismiss the complaint or, in the alternative, to stay the action pending the outcome of the action against Krecke and Rose. The motion court denied defendant's motion, and this appeal ensued. Defendant argues that the complaint should be dismissed because there is no privity between herself and plaintiffs, barring a claim on the legal advice she provided to her clients. She thus asserts that by documenting and negotiating the loan transactions, she was providing legal services within the scope of her authority as an attorney, conduct that cannot give rise to liability to third parties.

An attorney is generally not liable to third parties for the acts of her clients if the attorney has acted in good faith (*Weisman, Celler, Spett & Modlin v Chadbourne & Parke*, 271 AD2d 329, 330 [2000], *lv denied* 95 NY2d 760 [2000]). An attorney,

---

1. Prior to the commencement of the instant action, plaintiffs commenced an action against Krecke and Rose and their newly formed companies.

however, "may be held liable to third parties for wrongful acts if guilty of fraud or collusion or of a malicious or tortious act" (*Kahn v Crames*, 92 AD2d 634, 635 [1983]; *see also Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 AD2d 384 [1992]). I do not disagree with the majority's citing to the general rule. Where, however, as here, there is an indication of fraud and collusion, I believe it was error to dismiss the complaint in its entirety (*see also* Judiciary Law § 487 [providing for a civil cause of action against an attorney based on the attorney's intent to deceive]; *Mokay v Mokay*, 67 AD3d 1210 [2009]).

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach" (*Kaufman v Cohen*, 307 AD2d 113, 125 [2003]). A defendant knowingly participates in the breach of fiduciary duty when she provides "substantial assistance" to the primary violators, which occurs "when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur" (*id.* at 126).

Here, accepting the facts as alleged in the complaint as true, and according plaintiffs the benefit of every possible favorable inference (*Leon v Martinez*, 84 NY2d 83, 87 [1994]), plaintiffs properly stated a claim for aiding and abetting a breach of fiduciary duty. Specifically, they alleged that even though defendant knew that Rose was a former employee of Art Capital and that Krecke continued to be employed by Art Capital in a fiduciary relationship, she still helped Rose and Krecke take business away from plaintiffs by securing financing for them and helping negotiate a loan that violated the terms of existing agreements between plaintiffs and their borrowers. Plaintiffs specifically alleged that defendant assisted Krecke and Rose with the BH transaction, knowingly transferring artwork to Coram Capital, BH's alter ego, even though she knew that artwork had already been pledged as collateral to plaintiffs (*see Operative Cake Corp. v Nassour*, 21 AD3d 1020 [2005]).

Plaintiffs likewise adequately stated a cause of action for aiding and abetting fraud by alleging the facts in sufficient detail to afford defendant the requisite notice, particularly since the relevant surrounding circumstances lie peculiarly within her knowledge (*Knight Sec. v Fiduciary Trust Co.*, 5 AD3d 172, 173-174 [2004]). The complaint alleges that defendant, as attorney for Rose, knew of the fraud by Rose and Krecke, and defendant advanced its commission by providing substantial assistance in

advancing loans to clients that were secured by collateral already pledged to plaintiffs (*see Goldson v Walker*, 65 AD3d 1084 [2009]). Specifically, the complaint alleges that defendant had actual knowledge that the transaction with BH (plaintiffs' biggest borrower, as noted), was in violation of its loan agreement with plaintiffs. The complaint further alleges that defendant aided and abetted Krecke and Rose in concealing the loan from plaintiffs by using a shell company to receive the loan and removing the references to BH's address from the loan documents, thus concealing the fact that artwork already pledged as collateral to ACG Credit was used to secure the loan. Accordingly, in my opinion, the court erred in dismissing these two causes of action.

Notwithstanding defendant's position that her role as an attorney advising her client insulates her from liability, based on these facts there remains a question of whether she simply acted zealously on behalf of her client, or whether she engaged in activity that crossed that line.[2] We have drawn that line at the point where a lawyer begins to be a participant in the unethical or criminal conduct of her client (*see e.g. Bankers Trust Co.*, 187 AD2d at 385). The duty of zealous representation cannot be absolute. At bottom, lawyers are guardians of the public good, albeit with a responsibility to play their role to advance the ethical and noncriminal interests of their clients. New York courts have long recognized this. The majority cites *Ford v Williams* (13 NY 577, 584 [1856]) for the proposition that "where one acts only in the execution of the duties of his calling or profession, and *does not go beyond it, and does not actually participate in the trespass* he is not liable" (emphasis added).[3] That, however, is precisely the point. At this procedural juncture, where discovery has not taken place, and plaintiffs have adequately pleaded that defendant provided substantial assistance to Krecke and Rose in breaching a fiduciary duty to plaintiffs and advancing a fraud, I would reinstate those causes of action.

2. Rule 1.2 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0) provides that "[a] lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is illegal or fraudulent, except that the lawyer may discuss the legal consequences of any proposed course of conduct with a client."

3. The court affirmed the judgment of Supreme Court which, after a jury trial, found that defendant attorney was not liable as a trespasser. Rather, the attorney transmitted the instructions of his clients that the sheriff seize specific property, and did not actively participate in the tortious seizure.