ROOT *vs.* CHANDLER.

Trespass *de bonis asportatis* lies against a party who directs the detention of property taken by an officer, and indemnifies the officer against damages consequent upon such taking.

The constructive possession of an owner is sufficient to entitle him to maintain trespass for the taking of property out of the hands of a person to whom it was lent.

Evidence of justification is inadmissible under the plea of the general issue in an action of trespass *de bonis asportatis*.

THIS was an action of trespass *de bonis asportatis*, tried at the Erie circuit in March, 1831, before the Hon. ADDISON GARDINER, one of the circuit judges.

The plaintiff lent a pair of horses to *Evan Rice* and *Stephen Goss*, to enable them to retail a load of fish. The horses were lent at Buffalo, and the borrowers had permission from the plaintiff to proceed east as far as *Clarence*, in the county of *Erie*, but were requested not to go any further. Goss, one of the borrowers, proceeded however to *Batavia*, in the county of *Genesee*, where the horses were taken from his possession

by a constable, on an execution in favor of one Kelsey Stone against Evan Rice. After the horses had been in the possession of the constable a short time, a meeting took place of a number of persons, creditors of Rice, *of whom the defendant was one*, a consultation had, and the constable directed to detain the horses; which directions were subsequently renewed by the said creditors. An attempt was made by some person other than the plaintiff to replevy the horses, and to prevent such replevin the horses were secreted about a week, and afterwards sold by the constable for the benefit of the creditors of Rice. The defendant, by the permission of the plaintiff, read in evidence an instrument in writing, signed by the defendant and several other persons, reciting that the constable who had levied upon the horses had done so by virtue of several executions and attachments against Evan Rice, and agreeing to indemnify the constable and save him harmless against all expenses or losses that he might sustain or suffer by any suit or suits in consequence of the levy and the sale of the property in pursuance of the duties of his office, in proportion to the amount of their several demands upon the property. The defendant then insisted that the said instrument proved that the person who had made the levy was a constable at the time of such levy, and that as such constable he had taken the horses by virtue of the process mentioned in the instrument, and offered to prove that the horses had been fraudulently sold and disposed of by Rice to the plaintiff. This evidence was objected to and rejected by the judge on the ground that the instrument read by the defendant was not evidence of the execution and attachments mentioned therein, and that the defendant could not justify, not having pleaded or given notice of justification. The defendant then moved that the plaintiff be nonsuited on the grounds, 1. That the proof was not sufficient to charge the defendant as a *trespasser*, and 2. That the plaintiff, at the time of the taking of the horses, had not such possession as entitled him to maintain trespass. The nonsuit was denied, and the jury, under the charge of the judge, found a verdict for the plaintiff, with $151, $\frac{52}{100}$ damages. The defendant moves for a new trial.

*M. T. Reynolds,* for the defendant.

*A. Taber,* for the plaintiff.

*By the Court,* SAVAGE, Ch. J.   The questions raised in this case are, 1. Whether the plaintiff had a sufficient possession to maintain trespass ; 2. Whether the defendant was liable in this action ; and 3. Whether the defendant should have been permitted to prove, under the general issue, that the horses belonged to Rice and that they were sold upon executions against him.   1. Upon the first question there can be no doubt. The plaintiff had the general property in the horses ; he lent them to Rice to go to Clarence, but no farther ; he had a right to reduce the property to his actual possession whenever he pleased ; he was therefore constructively in possession, and the action on that ground is well sustained.   2. The defendant, with others, directed the detention of the property, and it was sold for the benefit of the defendant and the others. It is true that the defendant had no agency in the first taking of the property ; but within a short time, and probably within a few hours, from the language of the witness, the creditors of Rice, of whom the defendant was one, had a consultation and directed the constable to detain the horses.   It is evident that the officer had not resolved to detain the horses until he had the direction from the defendant and the other creditors of Rice, nor would he sell them without being indemnified.   I think, therefore, the jury were justified in finding the defendant guilty of the taking the property.   It is clear that but for the interference of the defendant and the others, the plaintiff would not have been deprived of his property.  3. The taking of the horses was not justified ; there was no legal evidence of any process authorizing the seizure of the property, nor could the defendant be permitted to give such evidence under the pleadings.   In *Demick* v. *Chapman,* 11 *Johns. R.* 132, the action was like this, trespass *de bonis asportatis,* and the plea *not guilty.*   The defence offered was similar to that offered in this case—that the property had been seized by virtue of process against the person who had fraudulently conveyed it to the plaintiff.   This court said that the excuse

that the property was taken by virtue of an attachment should have been specially pleaded ; that matter of justification or excuse at common law must be pleaded, and cannot be received in evidence under the general issue. The reason of the rule is to prevent surprise. 1 *Chitty's Pl.* 492. 1 *Saun.* 298, *n.* 1. 7 *Cowen,* 35.

New trial denied.