By the Court. Bosworth, J.
The jury, by direction of the judge, before whom this action was tried,found a verdict for the defendant. The plaintiff excepted to the decision, and appealed from the judgment entered on the verdict. If there was evidence in support of the cause of action stated in the complaint, which should have been submitted to the jury, the decision at the trial was erroneous.
*25 The plaintiff was the owner of the safe, and the title would remain in him until payment was made, or payment, as a condition of vesting the title in Brooks & Hopkins, had been waived. (Herring v. Willard, 2 Sand. C. R. 410.)
On the 26th June, 1852, or about that time, the Sheriff of New York levied upon the safe and other property the two executions against Brooks & Hopkins, one of which was on a judgment in favor of Hoppock, and the other was on a judgment in favor of Thomas Jackson. Both executions were' issued by the same attorney, and both were simultaneously delivered to the sheriff, viz. June 26,1852, at 25 minutes before 3 o’clock, P. M.
Attachments had been issued in. those actions, and levied upon the safe and other property before the judgments were recorded. The attachment first issued was in Hoppock’s suit, but whether the two attachments were simultaneously delivered to the sheriff , does not affirmatively appear. It is perhaps proper to presume that Hoppock’s attachment was first delivered, as the money realized was insufficient to satisfy both judgments, and instead of being applied pro rata upon the two, Hoppock’s was paid in full, and only the surplus applied upon Jackson’s.
Soon after the executions were levied, the deputy was notified that the safe belonged to Herring: the agreement between Herring and Brooks and Hopkins was shown to the deputy, and left with him for two' or three days, on his stating that he wanted to show it to, some of the parties. On the 6th of July, 1852, the sheriff took from Hoppock and Jackson, severally, bonds of indemnity, and Hoppock signed the bond as surety, which was given by Jackson; each bond recites “ that certain personal property, that appears to belong to the said James P. Brooks and Charles R. Hopkins, is claimed by some other person or persons,” and Jackson’s bond is conditioned that .“ he shall indemnify and save harmless the sheriff, as well for the levying and making sale under and by virtue of such execution, of all or any personal property, as he or they shall or may judge to belong to the-said judgment debtor.”
The sheriff, before selling the safe, sold other property which produced enough to pay Hoppock’s execution in full, and the *26 expenses of the sale, and leave a small surplus. He subsequently sold the safe ;.it had not been removed until after the sale of the property first sold had been made. The deputy testified that he sold the safe on both executions. Ho actual appropriation of the proceeds of the property levied upon was made by the deputy until after the safe was sold. On the 10th of August, 1852, the day after the time given to Brooks and Hopkins to pay for the safe had expired, the deputy paidHoppock’s execution to his attorney, and paid the balance of the proceeds to Jackson’s attorney, the same person being the attorney in both suits. On the evidence before us, we must presume that the deputy sold the safe out and out, and not subject to the right or claim of the plaintiff to the same. On this evidence a verdict was ordered in favor of the defendant.
A sale by the sheriff, of the safe, out and out, was tortious as against the plaintiff, and is sufficient to charge him as a trespasser, at the suit of the plaintiff.
All who direct, request, or advise an act to be done which is wrongful, are themselves wrong-doers, and responsible for all damages. (1 Ch. Pl., ed. of 1837, p. 91.)
To render one man liable for the torts another it is not necessary "that the two should be actually co-operating at the time the wrong is done; it is enough that the act of the individual sought to be charged, ordinarily and naturally produced the acts of the other. The intent with which an act is done, is by no means the test of the liability of a party to an action of trespass. If the act caused the particular injury, whether a trespass was intended or not, the person doing the act is liable for the consequences of the injury. (Guille v. Swan, 19 J. R. 381; Wall v. Osborn, 12 Wend. 39.)
When a sheriff requires a bond of indemnity against the claims of persons claiming to be owners of property levied upon, before he will proceed to sell it, and a bond is given to induce him to sell, all who sign the bond, in effect request him to sell it, and agree to take upon themselves the consequences of the sale. The act of giving the bond not only naturally produces the wrongful sale, but it is the main, if not the sole cause of its being made. The language of the sureties to the bond is, proceed and sell, and if the plaintiff in the execution *27 does not pay all damages, costs, and expenses to which you may be subjected, at the suit of the person to whom the property rightfully belongs, we will pay them. This request and contract of the sureties in judgment of law caused the wrong. This request and promise were required by the sheriff, as a condition to doing the wrong, the damages resulting from which, this action is brought to recover. Davis v. Newkirk, 5 Denio, 92, decides the precise point, that the signing of an indemnity bond as surety, is sufficient evidence to carry- the case to a jury, in an action against the surety, for a sale by a sheriff thus indemnified. We do not concur in the views presented to show that the decision in that case was erroneous. (See Root v. Chandler, 10 Wend. 110; People v. Schuyler, 4 Coms. 173.)
We think it was error to direct a verdict in favor of the defendants, on the evidence which had been given.
The judgment appealed from must be reversed, and a new trial ordered', with costs to abide the event.