GREENLEAF vs. LUDINGTON, impleaded with the LACROSSE
& MILWAUKEE RAILROAD COMPANY.

L., having assigned his certificate of stock in a railroad company, presented to the company an affidavit stating that he had *lost* it, and procured the issue of a new certificate in its stead, upon giving his bond "to save the company harmless from all loss by reason of said second issue, and from any liability on account of * * the stock described in said affidavit." The railroad company thereupon refused to allow a transfer of the stock on its books,

when requested by the holder of the first mentioned certificate, and the stock depreciated in the market, so that it became worthless, *Held*, that an action on the case for such refusal lay against L., as well as against the railroad company.

The holder of said certificate brought an action on the case against the railroad company and L. jointly, for his damages caused by such refusal, and recovered judgment against the company, but judgment was rendered in favor of L. The company being insolvent, the holder of said certificate then brought an equitable action against the company and L., praying that L. might be adjudged to pay upon said bond of indemnity the amount of said judgment against the company, in satisfaction thereof. The complaints in the two actions stated substantially the same facts, except that the complaint in the latter contained an allegation (not in the former) that about the time the plaintiff demanded a transfer of his stock on the company's books, L. promised that he would remove the obstacles to its transfer. *Held*, that the judgment in favor of L. in the first action was a bar to the second action as against him.

A majority of the court *held* that the bond (or its proceeds) was general assets of the company, and that the plaintiff could not have, by subrogation, a right of action in equity upon it.

APPEAL from the County Court for *Milwaukee* County.

The case presented by the complaint was this: In May, 1856, *Ludington* represented to the *La Crosse & Milwaukee Railroad Company* by affidavit that he had lost sundry certificates of its stock, and among them one for ten shares, numbered either 285, 295 or 317, he could not say which. He therefore requested the company not to transfer on its books the stock referred to, but to issue to him new certificates of stock in lieu thereof, which was done upon his giving the company a bond, with surety, conditioned "to save said company harmless from all loss or damage by reason of said second issue of stock to said *Ludington*, and from any liability on account of said certificates, and of stock described in said affidavit." Shortly afterwards, holders of the original certificates 295 and 317, presented them to the company for exchange or transfer, and the company, being satisfied that they had never been lost by *Ludington*, received them as valid. In June, 1857, the plaintiff purchased the original certificate No. 285, and in a few days afterwards presented it to the proper officers of the company with the indorsement of *Ludington* upon it, and requested that the stock should be transferred to him on the company's stock book, which the company, on account of the

said representations, request and bond of *Ludington*, refused to permit. The plaintiff thereupon called upon *Ludington*, stated the facts to him, showed him the certificate, and requested him to countermand his request to the company, and to remove the obstacles to the recognition and transfer of the stock, which he then promised to do, but never did. At the time the plaintiff demanded the transfer of the stock, its value was $770, but before the commencement of this action it had become worthless. In August, 1857, the present plaintiff brought an action against the railroad company for its refusal to allow the transfer of said stock, and recovered judgment against the company in April, 1858, for $840.06, which was unpaid, execution having been returned "no property." The demand of judgment in the present action was, "that said *Ludington* be adjudged to account to the plaintiff for the value of said ten shares of stock at the time of its presentation aforesaid, with interest; that the plaintiff may receive from said company the said bond and all benefit thereof; and may recover from said *Ludington* the amount of said judgment against said company, with interest, &c., and that he may have such other and further relief," &c. The railroad company made no defense. The defendant, *Ludington*, demurred to the complaint as uniting several distinct causes of action, which did not affect all of the parties, and which causes were not separately stated; and, the demurrer being overruled, he filed an answer, the first paragraph of which was addressed to so much of the complaint as precedes the allegation of the recovery of a judgment against the railroad company, and alleged that on the 24th of August, 1857, the said plaintiff impleaded said defendant, together with the said *La Crosse & Milwaukee Railroad Company*, in a certain action before the said county court, of and concerning the very same matters and things, and the very same cause of action set forth in so much of the plaintiff's complaint; that a trial of said action was had upon the merits, and such proceedings therein had, that on the 3d of July, 1860, the said *Ludington* recovered judgment against the plaintiff that said complaint be dismissed, and for his costs, &c.; which judgment still remained in force. The answer

also denied that *Ludington* ever requested the company not
to allow any transfer of the certificates of stock which he
represented that he had lost; or that he made such repre-
sentation or gave said bond in order to prevent the recogni-
tion of said stock by the company; and alleged that his
whole object was to procure the issue of new stock in lieu of
what he then believed he had lost, and to indemnify the
company therefor, and averred that the stock never had any
intrinsic value.

On the trial, the record of the former action was offered in
evidence by the defendant, *Ludington*. It was an action
brought by the present plaintiff against the *La Crosse & Mil-
waukee Railroad Company* and *Ludington* in 1857, and the
pleadings in it were substantially the same as in the present
suit, except that the complaint did not, of course, contain
any allegation as to the recovery of a judgment against the
railroad company; and it did not allege that *Ludington*
*promised* the plaintiff to countermand his instructions to the
company, and remove the obstacles to its recognition and
transfer of the stock; and the demand of judgment in the
first action was "for the sum of $760, with interest," &c. It
was admitted that the allegations in the complaint in the
first action were concerning the very same facts and matters
of difference mentioned in the complaint in the present ac-
tion, so far as they appeared to refer to the same subject
matter. The finding of the court in the first action was for
the plaintiff, as to all the material allegations of the com-
plaint; but its conclusion of law was that, upon the facts,
*Ludington* was not liable as charged in the complaint; and
judgment was rendered in favor of *Ludington* for costs, and
against the railroad company for $840.06. The plaintiff
objected to the admission of the record, and the court exclu-
ded it.—The plaintiff was sworn in his own behalf, and tes-
tified that he presented the stock certificate No. 285, to the
officers of the railroad company, and demanded a transfer of
it as stated in the complaint, and that the company refused,
assigning as a reason that *Ludington* had lost a certificate
which they believed to be the one then presented, and that
a certificate had been issued to him in lieu of it, and that he

had given them a bond of indemnity against it; that the witness immediately called on *Mr. Ludington*, told him of the refusal and the reason of it, showed him the certificate, and requested him to see the officers of the *Company* and remove the obstacles to its transfer; that *Mr. Ludington* took the certificate and said, "I will see Mr. Goodrich (acting secretary of the company), on the subject, and will see if the matter can be made right;" that *Mr. Ludington* afterwards returned the certificate to the witness without having complied with his request, and had never performed his promise; and that the witness still held the certificate.—Mr. Goodrich testified that a bond was executed by *Ludington* and Cross, and new stock issued to *Ludington* in lieu of that alleged to be lost, as stated in the complaint; he did not recollect that *Ludington* gave any direction personally not to transfer the stock mentioned in his affidavit, but the matter was talked over generally at the board, and the general impression was that new stock should be issued, and that the old stock should not be recognized. *Mr. Ludington* never requested the witness to transfer that stock to the plaintiff. At the time the plaintiff presented the certificate, *Ludington's* signature was subscribed to the assignment, and witness knew it to be genuine.—The bond of *Ludington* and Cross referred to in the complaint, and the affidavit annexed to it, were read in evidence by the plaintiff, and it was admitted that at the time the transfer of the stock was demanded by the plaintiff, its market value was $77 a share; that at the commencement of this suit it had no market value, but that its intrinsic value was the same as it was when the transfer was demanded.—The defendant *Ludington*, as a witness in his own behalf, stated that he had never requested or directed said *Railroad Company* not to transfer any of the stock mentioned in his affidavit as having been lost. He also introduced an instrument in writing, executed to him by said *Railroad Company*, May 24th, 1859, under its corporate seal, by which, in consideration of one dollar, said company released him from all claims, demands and causes of action in law or equity which said company then had, or thereafter should or might have, by reason of any matter or cause whatsoever.

The testimony of Goodrich and of *Ludington* was read from the minutes taken on the trial of the *first* action. It was admitted that the release above mentioned was executed upon a settlement had between *Ludington* and the *Railroad Company*; that at the time it was made, the company was notoriously insolvent; that a suit was then pending between a creditor of said company, and said *Ludington*, to subject certain real property to the payment of the debts of said company; and that the action first brought by the present plaintiff against the company and *Ludington*, was then pending as against *Ludington*—judgment having been already entered therein against the company; that the railroad of said company, and all the property used in operating it, had been leased to one Chamberlain, to secure a judgment he held against the company; and that executions on those judgments had been returned unsatisfied.—The court found as facts, 1. That the plaintiff's stock described in the complaint was of the value of $770, at the time of the presentation of his certificate as therein stated, and was, at the time of the commencement of this action and ever since, worthless. 2. The execution of the release by the company to *Ludington* as before stated. 3. That at the time of the execution of the release, the company was notoriously insolvent; that it had parted with the possession of its railroad and other property connected therewith, the same being held by one of its creditors; that a suit was then pending in the U. S. district court to subject certain property to the payment of an execution issued out of that court against said company; that the plaintiff's judgment and many other judgments against the company were unpaid, and executions upon them had been returned unsatisfied; that the defendants had notice of the plaintiff's claim against *Ludington* as well as against the company, and that a suit by the plaintiff was then pending to enforce that claim against *Ludington*; that there was no consideration proved to be paid for the release of the bond referred to in the complaint; and that the release was made by the company and accepted by *Ludington*, so far as it was designed to affect the plaintiff's claim, with the intent to defraud him; and as a matter of law, the

court held that said release was fraudulent and void as to the plaintiff; that *Ludington* was liable and should pay to the plaintiff the amount of the judgment recovered by him against said company, being $840.06, together with interest &c., for which amount the court directed judgment to be entered in favor of the plaintiff, against said *Ludington*, the payment of which judgment should extinguish said judgment against the company, and should be treated as a payment by said *Ludington* on account of his liability to said company upon said bond, and should, to the amount thereof, be a bar to any further action on such bond; and that upon payment of said judgment by *Ludington*, he should be entitled to said certificate of stock held by the plaintiff. The defendant excepted to portions of the 3d finding as to the facts, and to each of the conclusions of law. Motion for a new trial overruled, and judgment for the plaintiff.

*E. Mariner*, for appellant:

The court erred in excluding the record of the former action. It is claimed that the first action was against the appellant and his co-defendant for a tort, and that the present is an equitable one to get the benefit of an indemnity against an act done at the request of the appellant; but the act done was a tort; the request was to be guilty of a tort, and the person requesting and indemnifying is liable as a principal, and in an action for the tort, if liable at all. *Root vs. Chandler*, 10 Wend., 110. And having once been tried for the tort and found not guilty, the judgment in that action is material as evidence. *Simpson vs. Hart*, 1 Johns., 91; *Jackson vs. Wood*, 8 Wend., 5. 2. There is no cause of action against the appellant. There is no proof of any intention of the appellant to injure the respondent; no proof of any request by him to the company not to transfer the respondent's stock. At the worst, the appellant's statement that he had lost the stock, was a bare lie without an intent to injure. 3 Bulst., 95; *Pasley vs. Freeman*, 2 Smith's L. C., 55; 2 C. M. & R., 707; 2 E. & B., 216; 6 Hill, 523. The refusal of the company to transfer the stock was not a necesssary or legitimate consequence of the appellant's representations, especially when the respondent presented unquestionable evidence that the

representations were untrue. The refusal was probably from caprice or wilfulness, as in *Ashley v. Harrison*, 1 Esp., 48, since the company was fully indemnified against all liability on the stock issued to the appellant. The refusal was a voluntary tort, for which the law will never compel an indemnity, and a contract thereto would be void. Chitty on Con., 588, and note. A right of action for such a tort cannot be assigned. 6 Wis., 645; 11 Mees. & Wel., 191, 625; 1 Young & Coll., 481; 1 Story's Eq., 1040, 9 and note. 3. The release is valid on its face. If voidable because made to defraud creditors, those who attack it must show that it was so made.

*Smith & Salomon*, for respondent:

The new issue of stock to *Ludington* superseded the old, and $770 of value passed from *Greenleaf* to him, without any consideration, the certificate of *Greenleaf* becoming as mere waste paper in his hands. *Ludington* gained this sum, to which he had no right, and *Greenleaf* lost it. It is contrary to all equity that *Ludington* should retain that sum as the fruit of his falsehood, and he became involuntarily the trustee of *Greenleaf*, and as such is responsible in the action. It is true there is no allegation of fraud in making the representation that he had lost the certificate; nor was there an allegation of fraud in the complaint in the first action, and for that reason the action at law failed as against *Ludington*, but equity held him, none the less, as an *innocent* trustee. We may add, that after he came to a knowledge of the facts, his persisting in the wrong and his continuing to enjoy his unlawful gains, mark him thenceforward as the *fraudulent* trustee. 2. The company received *Ludington's* bond dedicated to the specific purpose of responding to the claim of the proper holder of the certificate. A fund was thereby created and set apart to meet that liability. Now if the company, when parting with the plaintiff's property, (for so equity regards it), receives from *Ludington* some new valuable thing to take the place of it, shall not the plaintiff, when he comes for his own and finds it not, be entitled at least to that which was substituted for it? Who shall object? Not the company, already convicted of the wrong by judicial judg-

ment. Not *Ludington*, certainly, who devised the wrong, and to this day enjoys its fruits. This right of substitution is not a new thing. It makes no difference that *Greenleaf* was not a party to the bond. *Not out of the contract, but out of equity*, springs the right, say all the authorities. (1.) It is objected that subrogation obtains only where there is a contract indebtedness, not a mere liability for a tort. But see *People v. Schuyler*, 4 Coms., 173, 183; *Brinson v. Thomas*, 2 Jones' Eq., 414; *Blalock v. Peake*, 3 id., 323; 6 Watts, 221–7. The suggestion is founded on the ground that subrogation is an equitable assignment, and that a right of action for tort cannot be assigned. This is correct only as to actions for wrongs to the person. See *Brewer v. Dew*, 11 Mees. & Wel., 625; *Rogers v. Spence*, 13 id., 571; 2 Eq. Lead. Cases, Pt. 2, 224; *Hudson v. Plets*, 11 Paige, 180. And it is a good reply to the objection, that the company was liable to the plaintiff in *assumpsit*, as well as in *case* (*Kortwright, v. Com. Bk.* 20 Wend., 91; S. C., 22 id., 348), and had the action sounded in tort, the judgment merged it, and it is a contract. 1 Eq. Lead. Cas., 120; Jones' Eq. Cas., 416. (2.) It may be said that *Ludington* did not indemnify the company as his surety, but for a different purpose. If true, this would not hinder the just application of a beneficent principle, but in an equitable view the company stands as surety. The injurious act is done at *Ludington's* request, for his benefit. He holds himself out as responsible, takes the profit and agrees to stand the hazard. If he had given a pledge or mortgage, it would be conceded that the company would hold it in trust to satisfy the appellant's claim. Because the indemnity is the personal liability of *Ludington*, are we less entitled to it? See Burge on Suretyship, 324–6; 1 Lead. Eq. Cases, 120; 4 Kent, 307; 1 Story Eq. Jur., §§ 502, 503 *et seq.*, 638; 2 id., §§ 1244, 1250–1; 1 Hill. on Mort., 318, *et seq.*, 327; sec. 59, p. 333, §§ 68 *a*, 69; Broom's Maxims, 552, 557—*Qui sentit commodum, sentire debet et onus;* 1 Eq. Cas. Abr. (Eng.), 93; 11 Ves., 12; 4 Dana (Ky.), 27; 19 Ala., 798; 11 Paige, 28; 20 Conn., 427, 436, 443, and authorities cited; 7 Cush., 337; 4 Coms., 183; 6 Watts, 221; 7 Ind., 615; 2 Sandf. Ch. Rep., 478; *King v. McVickar*, 3 id., 192; *Ten Eyck v. Holmes*, 3

id., 428; 9 Paige, 432; 25 Vt., 427; 8 Met., 19; 4 Coms., 312; 3 John. Ch. R., 229; 11 Paige, 28; 11 id., 49; 9 id., 446; *Hendricks v. Robinson*, 2 John. Ch. R., 283, 315; 5 Heywood, 50; 9 B. Monroe, 394–8; 25 Barb., 175–178; 5 Cranch, 322; 7 Humph., 303; 18 Mo., 136; 19 id., 632. (3.) The suit is maintainable as a judgment creditor's bill. The following cases establish *Ludington's* indebtedness upon the bond of indemnity; 8 Cow., 623, 638 *et seq.*; 3 Denio, 321; 9 Barr, 366; 2 Rich., 80; 1 Comst., 550; 8 Mass., 5; and see 40 Maine, 237. 4. The action is maintainable on *Ludington's promise* to remove the obstacles in the way of the transfer of the stock. The breach of the promise and the damages are proved; why should the plaintiff not have judgment? 5. The release set up by *Ludington* is a fraud on the plaintiff. It was held by the company in trust for him, and they could not sell, much less give away, the plaintiff's rights to *Ludington*, who had notice of them. Willard's Eq. Jur., 118; Adams' Eq., 149; 7 Humph., 303; 20 Conn., 443; 10 Paige, 210. 6. The judgment in the first action was not a bar. When that action was tried the county court had no chancery jurisdiction. The case was tried as a case at law, and no intentional misrepresentation or fraud by *Ludington* being alleged, the court held that the plaintiff had no remedy at law against him. The fraudulent intent of *Ludington* was material. 1 Hill. on Torts, 102, 14, 15, 25; 2 id., 292; 5 Wis., 551; Broom on Com. Law, 685, 345, *et seq.*, 841. The court held also that the special damage was not the legal and direct consequence of *Ludington's* acts, but was illegal and too remote. See 6 Hill, 522; 1 Smith's L. Cases, 132 *a;* 2 id., 300; 12 Barb., 657, 622. The only redress was in equity, and even there it is founded on other grounds than the mere untruth of the representations. The authorities are reviewed in 5 Wis., 551. The county court afterwards acquired equitable jurisdiction, and the present action is governed by different rules. The decision that an action at law does not lie, does not bar the subsequent suit in equity. 5 Cranch, 322. None of the grounds on which this action is upheld could be urged in the former. Besides, the causes of action are different. The *promise* of *Ludington* to

remove all obstacles to the transfer of the stock, is alleged in the complaint in the present action, and was not alleged in the former one.

*By the Court*, DIXON, C. J.   The refusal of the defendant *Railroad Company* to transfer upon its books the plaintiff's certificate of stock, was a tort for which the plaintiff was entitled to maintain his action in the nature of an action on the case against the company.   He has in fact done so and obtained a judgment for the damages suffered by reason thereof.   The defendant *Ludington* was a party to that tort and *primarily* responsible to the plaintiff for the damages sustained.   He was the prime mover—the exciting cause of the wrong, having for his own sole benefit given a bond of indemnity which led directly to its commission.   He likewise was a defendant in the action against the company, but final judgment was rendered in his favor.   The facts in the two actions, both in pleadings and proof, are the very same.   In truth, the evidence in the former action was, by stipulation, read upon the trial of this.   *Ludington* now sets up that judgment in bar of a recovery here, and I think the answer is good.

The rule of law is well stated by BEARDSLEY, C. J., in *Davis vs. Newkirk*, 5 Denio, 94, that all who direct, request or advise an act to be done, which is wrongful, are themselves wrongdoers and responsible for all damages.   It is stated perhaps with more accuracy in *Judson vs. Cook*, 11 Barb., 644, that all who bid, command, advise or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner, as they would be if they had done the same act with their own hands.   Every unlawful interference with, or assertion of control over, the property of another, is sufficient to subject a party to an action.   *Wall vs. Osborn*, 12 Wend., 39 ; *Phillips vs. Hall*, 8 id., 613 ; *Dreyer vs. Ming*, 23 Mo., 434.   The most frequent instances of the application of these principles are to be found in actions of trespass *vi et armis*.   *Scott vs. Shepherd*, 2 W. Black., 892 ; *Guille vs. Swan*, 19 Johns., 381 ; *Leame vs. Bray*, 3 East, 593.   " To render one man liable in trespass for the acts of others it must

appear," says C. J. SPENCER in *Guille vs. Swan*, " either that they acted in concert or that the act of the individual sought to be charged, ordinarily and naturally produced the acts of the others." But the doctrine is not limited to immediate and forcible injuries. The same reason applies to those which are indirect and committed without violence; and so are the authorities. Opinions of the justices in *Scott vs. Shepherd* and note, and the opinion of Lord ELLENBOROUGH in *Leame vs. Bray*; *Clark vs. Whitaker*, 19 Conn., 319. GOULD, J., in *Scott vs. Shepherd*, says: " The whole difficulty lies in the *form* of the action and not in the *substance* of the remedy."

Authorities are very numerous, that a request or indemnity to a sheriff or other executive officer to do an act or withhold property, which turns out to be wrongful, makes the party liable for all damages which may ensue. *Davis vs. Newkirk* and *Judson vs. Cook, supra; Root vs. Chandler*, 10 Wend., 110; *Coats vs. Darby*, 2 Coms., 517; *Herring vs. Hoppock*, 3 Duer, 20. And in such cases the execution of a bond of indemnity by a stranger or one having no interest in the process, but who signs as security merely, is said to be sufficient to charge him without evidence of any other interference. *Davis vs. Newkirk; Herring vs. Hoppock, supra.*

It is impossible to distinguish between these cases and the one at bar. The refusal of the company to make the transfer, resulted *naturally and ordinarily* from the giving of the bond of indemnity. The plaintiff alleges and proves this to have been so. Not only that, but he also alleges, and, as I think, proves, that *Ludington* requested the company not to transfer the stock. He did the same thing in the former action, but the judge, though he found the facts, decided as matter of law that there could be no recovery. That decision was no doubt erroneous, yet binding in all collateral proceedings.

It is true that *Ludington* then denied and still does, that he made any direct request, and insisted that the refusal of the company was voluntary and therefore he ought not to be held responsible. He likewise insisted, as in this action, that the bond of indemnity was given to protect the company from loss upon the new and not to prevent a transfer of

the old stock. If it be admitted that there was no other request than such as is to be implied from the giving of the bond, that of itself is sufficient. No one will suppose that without the bond the company would ever have refused the transfer. That was the source, the *causa causans*, of all the trouble and damage which came to the plaintiff. It was in effect a continuing request to the company not to make the transfer, a constant assertion that the old stock was his, the same as if he had been in the company's office when it was presented, and had said, " This stock belongs to me—do not transfer it, and I will indemnify you." Having given the bond to induce the company to issue the new stock, and thereby to repudiate the old, he cannot be allowed, when such repudiation actually takes place, to say that it was the mere voluntary act of the company. It was a matter in which the company had no interest, but acted exclusively for his advantage. As was said in *Coats vs. Derby*, he will not be permitted to show that the act was not the consequence of the request which the law adjudged to be part and parcel of the act itself. No man is allowed to incite another to a wrong, and after its commission to give his want of influence in evidence in bar of an action. Such a principle would enable a man to encourage another to commit murder in his presence, and then escape upon the ground that the homicide was malicious enough to have done the same thing, if he had remained silent. The law, with a sounder morality, adjudges the abettor guilty of murder.

It furthermore appears that, after the refusal, the plaintiff called upon *Ludington* and requested him to go to the company and give his consent to the transfer, which he refused and neglected to do. That was enough to charge him with the consequences of the wrong, upon the principle of a subsequent ratification of an act done for his benefit.

As to the objection that the bond was given to protect the company from loss by reason of the issue of the new stock, and not to prevent a transfer or recognition of the old, it is true that such is its language. Nevertheless the only method in which the company could with safety avail itself of the security afforded by it, was to reject the old stock. The

bond recited that *Ludington* owned and had lost the old stock. If the company recognized it without suit in which it could be judicially established that *Ludington* did not own and had not lost it, it took upon itself the risk and trouble of proving these facts, the very thing which the bond was designed to guard against, and then, if it failed, it would be wholly without security. Hence it could not do otherwise than refuse, and if sued give *Ludington* notice to defend. The refusal, therefore, was the legitimate consequence of accepting the bond and issuing the new stock.

For these reasons I am of opinion that the former judgment is a bar to any recovery in this action. My brethren, however, are of opinion that there can be no subrogation or right of action in equity upon the bond at the suit of the plaintiff; that its proceeds were mere general assets in the hands of the company, and therefore that the action should be dismissed. There is some confusion in the authorities upon that subject, and my mind is not clear. Hence I prefer to rest my judgment upon the grounds above stated, which to me are plain and intelligible and about which I entertain no doubt. For if it be admitted that the plaintiff had a remedy in equity upon the bond, it was concurrent with that at law for the wrong, and the judgment in the one court bars a proceeding in the other.

The judgment of the court below must be reversed, and the case remanded with directions that it be dismissed.