## F. F. Davis *vs.* Newkirk, Barker and Yates.

The giving of a bond of indemnity by a surety to induce an officer to seize particular property on an execution, makes the party executing such bond a trespasser, if the seizure be illegal.   *Per.* Beardsley, C. J.

Where a partner of a firm had been the holder of a note of which the firm were makers, and he and another of the partners subsequently confessed judgment on it to a third person, to whom it was alleged it had been transferred; in trover by the plaintiff in that judgment for property he had purchased at a sale on a *fi. fa.* thereon, against creditors claiming under a subsequent execution against the firm, who set up that the first mentioned judgment was fraudulent against the creditors of the firm; *held* that the declarations of the partners who confessed the judgment, made at the time it was confessed, admitting an intention thereby to defraud the creditors of the firm, were competent evidence for the defendants.

Trover, for a quantity of lumber, tried at the Chemung circuit, in October, 1844, before Monell, late Cir. J.

In the spring of 1843, the lumber belonged to the firm of Davis, Thomas & Co. which consisted of Cornelius Davis, Taft and Floyd. Two persons of the name of Thomas, had been members of the firm, but had withdrawn before this time. The plaintiff claimed title under a sale on a *fi. fa.* issued upon a judgment in his own favor against the members of the firm, rendered in the Tioga common pleas, and docketed in Chemung county. The judgment was rendered on the 25th day of March, 1843, and the execution was issued a day or two afterwards. The suit on which the judgment was recovered was commenced by declaration which was served only on C. Davis and Floyd, who soon after confessed judgment therein, which was entered up against all the defendants pursuant to the statute respecting joint debtors. The defendants set up property in Newkirk, acquired by a sale on a *fi. fa.* issued on a judgment in his favor subsequently to the plaintiff's execution; and they attempted to show that the plaintiff's judgment and execution were fraudulent against the creditors of Davis, Thomas & Co. Newkirk became the purchaser upon the execution in his favor and took the timber away. To prove a conver-

tion by Barker and Yates, the other defendants, the plaintiff gave evidence of a bond of indemnity given by them with Newkirk to the sheriff before the sale, by which they engaged to save him harmless for levying upon and selling the lumber on Newkirk's execution. There was some evidence going to connect them with Newkirk in taking away the lumber. After the plaintiff had rested, the defendants moved that Barker and Yates should be discharged on the ground that there was no evidence against them. The motion was denied and the defendants excepted.

It appeared that the plaintiff's judgment was recovered on a promissory note for $1000, made by the firm of Davis, Thomas & Co. to C. Davis one of the firm, in September, 1841, and C. Davis remained the holder of the note until shortly before the suit in favor of the plaintiff was commenced upon it, in March, 1843; and while he was the holder there were large transactions between him and the firm, but there had been no settlement of these matters, and it did not appear how the balance was. It appeared that the firm was in insolvent circumstances in March, 1843, and that C. Davis had made up his mind that it must fail, and so informed Floyd at that time. He suggested to Floyd that something must be done to secure the property, and for that purpose proposed to him that this note should be transferred to the plaintiff, who was a brother of C. Davis. Floyd said the note had been paid, and Davis admitted that it had been as to him, Floyd, but said that Taft had not paid his share. It appeared that the payment referred to as having been made by Floyd, was only a receipt of some money belonging to the firm by C. Davis, but which had not been specifically applied on the note. The alleged transfer of the note to the plaintiff was made by C. Davis, handing it to one Bristol, as the agent of the plaintiff, who was his brother-in-law. Shortly before this C. Davis had told the plaintiff and Bristol that he must fail; and there was some other evidence tending to cast suspicion on the transaction and to lead to a doubt whether the note was really due and unpaid at the time it was transferred to the plaintiff, which is sufficiently referred to in the opinion

of the court. The defendants offered to prove by the witness Floyd, that he and C. Davis had conversed about the judgment to the plaintiff and had agreed that it should be given to defraud the creditors of the defendants in that judgment, and that the witness intended the judgment to have that effect. This evidence was objected to by the plaintiff, and the judge sustained the objection and excluded the evidence, and the defendants' counsel excepted. The plaintiff ultimately had a verdict for the value of the lumber, which the defendants moved to set aside on a case.

*J. A. Collier*, for the defendants. 1. The judge erred in excluding the evidence of Floyd to show the conspiracy between him and C. Davis, to give the judgment in question in order to defraud the creditors of Davis, Thomas & Co. ( *Waterbury* v. *Sturtevant*, 18 *Wend.* 353, 360.) 2. There was no proof against Barker and Yates, and the court should have discharged them. Their signing a bond of indemnity to the sheriff did not make them wrongdoers.

*N. Hill, Jun.* for the plaintiff, upon the second point, referred to, *Root* v. *Chandler*, (10 *Wend.* 110.)

*By the Court*, BEARDSLEY, C. J. The judge was correct in refusing to discharge the defendants, Barker and Yates, when the plaintiff rested. They had signed a bond by which they engaged to indemnify the sheriff for levying upon and selling this lumber on the execution in favor of their co-defendant in this suit, Newkirk, It was in consequence of receiving this bond that the sheriff proceeded to make the levy and sale, and if that was wrongful, these defendants were responsible therefor. The bond contemplated such a seizure and sale, and it was a virtual request to the sheriff to proceed accordingly. What the sheriff did was therefore, in effect, done under the direction and with the advice and concurrence of these defendants, and for which they are as much responsible as the sheriff would be. All who direct, request or advise an act to be done which is

Davis *v.* Newkirk.

wrongful, are themselves wrongdoers, and responsible for all damages. (1 *Ch. Pl. ed.* 1837, *p.* 91.) Giving the bond of indemnity was alone sufficient to carry the case to the jury on this point, although there was other and sufficient evidence for that purpose.

I think however, the judge erred in rejecting evidence of an agreement between C. Davis and Floyd, two of the defendants in the judgment in favor of the plaintiff, and the two who gave a confession therein, that said judgment should be given in order to defraud the creditors of the defendants in said judgment. The plaintiff in that judgment, who is also plaintiff here, claims that it was recovered on a demand honestly due to him from the defendants, and was, as to him, in all respects bona fide. It was rendered on a note given by the defendants to one of themselves, (C. Davis,) in 1841. He remained such owner until March, 1843, when it was transferred upon some terms or for some purpose by the then holder, C. Davis, to the plaintiff or to one Bristol. Bristol was admitted to be the plaintiff's agent, and both he and the plaintiff had been previously informed that C. Davis, and the other signers of the note, or at least Taft and Floyd, who still remained in business with C. Davis, were in failing circumstances. This would not be conclusive that a subsequent transfer of the note to the plaintiff was necessarily fraudulent, but it affords a proper ground for a close scrutiny of every such alleged transfer. The transfer of this note was made in fact to Bristol, but upon what terms is not clearly shown. There is a statement of Bristol, who was sworn as a witness, that C. Davis was at that time indebted to the plaintiff, but it is quite too loose and vague to be regarded as evidence of a fact so important and vital, in a case as strongly suspicious as this is. Nor is there any thing which can be taken as evidence of a transfer of the note to the plaintiff in payment upon, or as security for the debt alleged to be due to him, from C. Davis, nor in fact that it was transferred to the plaintiff at all. He may have been a purchaser of it, and a bona fide one, and the consideration may have been valuable and adequate; but upon the evidence, as detailed in this

case, he cannot claim any such character or right.   Exclud-
ing the idea of a bona fide purchase by him, and there is noth-
ing left of the case but an apparent contrivance to have this
judgment perfected at the time and in the form it was, for
some purpose ; and if the plaintiff was not such a purchaser, it
was entirely competent to show that by the agreement between
the persons engaged in procuring the judgment to be rendered,
that the purpose was to defraud creditors.   The plaintiff can claim
nothing under this judgment unless he was a bona fide pur-
chaser of the note, for value.   That was not shown.   It did
not even appear that he was in any sense a purchaser, for upon
that point the evidence is so vague and equivocal that it must
be wholly disregarded.   What the transaction really was, may
not have been fully disclosed on the trial ; or if it was, the writ-
ten case before the court may fail to present it as it appeared.
But as it appears in the case, the evidence of an agreement be-
tween the two defendants who gave the judgment, that it should
be given to defraud creditors, was admissible, and should
have been received.   The rights of no person who could claim
to be a purchaser in good faith, and for value, stood in the way
of receiving this evidence.   Its rejection was erroneous, and
there must be a new trial.

New trial granted