GEORGE M. CHAPMAN *against* ALEXANDER DOUGLAS AND OTHERS.

Plaintiff being in possession of certain personal property, and claiming title to it from a corporation of which a receiver had been appointed, it was levied on as the property of the corporation, under an execution, on a judgment recovered subsequent to the appointment of the receiver: *Held,* that the receiver was the only one who could assert the corporation's interest in the property, and that the obligors on the indemnity bond, given to the sheriff on the seizure of the property under the execution, could not show that the corporation's title had never passed to the plaintiff.

The obligors in an indemnity bond given to a sheriff, conditioned to secure him harmless for levying, &c., on goods which he or they may judge to belong to the debtor, are not liable for the acts of the sheriff in seizing goods conceded to belong to a third person, even though they are contained in a safe claimed to belong to the debtor, and the goods cannot be removed therefrom on account of the safe's being locked.

In such a case the indemnitors are liable only where they have expressly or impliedly authorized or ratified the acts of the sheriff in making the seizure.

APPEAL by defendants from a judgment of this court entered on the verdict of a jury at trial term.

The action was brought against the defendants Douglas, Taylor, and Mathew, for trespassing on the plaintiff's premises and carrying off an iron safe and merchandise.

The defendants, who were the obligors in a bond of indemnity given to John Kelly, sheriff of the city and county of New York, on a seizure of goods by him under an execution in favor of the defendant Douglas against the New York Silk Manufacturing Company, justified the taking of the safe on the ground that it was the property of that company, and that the sheriff had taken it by virtue of the execution in his hands; and as for the merchandise, they alleged that it was in the safe at the time it was seized, and that the safe was locked, and the key in the possession of the plaintiff, who refused to open the safe or take out the goods, although requested to do so; and that thereupon the sheriff was obliged to and did, after giving due

notice to the plaintiff, break open the safe and remove the goods, and tendered them to the plaintiff, who refused to receive them.

On the trial the defendants offered evidence to show that the safe had originally belonged to the New York Silk Manufacturing Company, and that the ownership of it had never been legally transferred to the plaintiff, although it was conceded that it was in his possession at the time of the levy.

In rebuttal, the plaintiff was allowed to show (though he had not replied to the defendants' answer), that previous to the recovery of the judgment by Douglas, a receiver of the property of the New York Silk Manufacturing Company had been appointed by the Supreme Court, in an action brought by a judgment creditor, and that the decree authorizing the appointment of such receiver sequestrated all the stock, property, things in action, money, claims, funds, and effects of the company, and conferred on the receiver all the powers and authority conferred on receivers by 2 R. S. 469, §§ 67, 68; and that the receiver had perfected his appointment by duly filing his bond.

As to the goods in the safe, they were conceded to be the property of the plaintiff, and it was shown that he had refused to unlock the safe or take out the goods, and that he had had notice of the time and place at which it would be forced open, and had failed to attend; but it was not shown, as alleged in the answer, that after the goods had been taken from the safe, they had ever been tendered to the plaintiff.

At the trial, Mr. Justice ROBINSON gave a written opinion on the question of the defendants' right to justify the seizure of the property under the execution against the New York Silk Manufacturing Company, in which, after stating the facts in regard to the receivership, and the judgment and execution and the seizure of the property, he said: " The acts of the sheriff were authorized by the defendants, who indemnified him, and now assume jurisdiction of his acts, and on the trial have introduced proof tending to show the title in the safe of the New York Silk Manufacturing Company, and that the alleged purchase by plaintiff was unauthorized by that company,

and void under several statutory provisions. To this defense plaintiff, relying on his possessory title, claims, among other matters, that defendant Douglas is an entire stranger to any legal interest in the goods that might be acquired by way of levy under execution, and that any right to contest it exists only in the receiver of the company, to whom he alone is responsible. In this I think he is correct. The defendant Douglas, as execution creditor, could only enforce a levy on property of the New York Silk Manufacturing Company, but certainly not on any in which, by operation of law, the entire title and right of reclamation had been vested in and existed in a receiver holding all such interests in trust for the benefit of the creditors at large. Did any doubt exist as to the common law power of such a receiver to assail the *bona fides* of the transfer under which plaintiff claims, it was removed by the act of 1858, c. 314 (3 R. S. 5th ed. 226). If plaintiff's possessory right could be assailed or impeached by any one, by reason of any defect in the claim or title under which he held the safe from and after April, 1866, it was only by the receiver, who held all the rights of the Silk Company in the property, or to any recovery for its value or detention. On such appointment of the receiver, and vesting in him of all real and personal property of the corporation, no creditor of that company could, by attachment, judgment and execution, or other process, acquire any interest in it in derogation of the absolute title acquired by the receiver, or upon any independent right enforceable against the corporation. Upon these considerations, the defendants acquired, by this attachment judgment and execution, no legal right to levy on the safe in question, whatever defects existed in plaintiff's title. He remained at the time defendants intervened, and at the time this suit was brought, liable therefor alone to the receiver, and whatever judgment defendants might obtain in this action, affirming the right to seizure under the attachment or execution in his favor, it in no way divested that of the receiver to reclaim the property from plaintiff, or to recover from him its value. No such double responsibility as would arise from defendants' right of retention of the safe can exist in the law. The receiver was

alone the person entitled to enforce any such right of reclamation of the property, but in trust for all the creditors of the corporation. The sheriff, acting for defendants only, could take such rights of property in the safe as remained in the New York Silk Company, and as those had all been by law transferred to the receiver, he took nothing, not even the right of contesting plaintiff's *possessory right* to the property. The whole matter sought to be litigated by the answer is one that rested solely in the receiver. Defendant is a stranger, cannot question the title of the possessor of property, although held under claim of ownership that may be unavailable against the receiver, the true owner (2 Greenl. Ev. § 618). Having neither possession nor title in himself, nor authority from the receiver to take possession, the acts of the defendants in interfering with the plaintiff's possessory right were wholly unauthorized."

On the question as to the defendants' liability for the seizure of the goods in the safe, the defendants' counsel requested the court to charge as follows:

"It is not shown that the defendants requested the sheriff to levy upon or remove the goods. The issuing of the execution was not such a request; and the delivery of the indemnity bond was not such a request, inasmuch as by that bond the defendants only undertook to save the sheriff harmless for taking or removing, &c., what might appear to be the property of the company; and the goods did not appear to be, and the defendants did not claim that they were, the property of the company."

And also, "The defendants are not responsible for the goods, unless they requested the sheriff to levy upon, remove, or meddle with such goods, or requested the sheriff to remove the safe, with knowledge that it contained the goods, and there is no evidence of any such request."

The court declined to charge in accordance with either of such requests, and the defendants' counsel duly excepted.

The court directed a verdict for the full value of all the property taken, with interest, and the jury assessed the damages as follows: Value of safe, $400; value of silk, $2,512;

damages assessed for safe, $400, and interest, $168; for silk, $2,512, and interest, $1,055 04.

DALY, Chief Justice.—The defendants to justify the taking of the property, averred that at the time of the levy, it was the property of the New York-Silk Manufacturing Company, or that they had an interest in it, which was liable to levy and sale under the attachment and execution.   Their whole defense rested upon this averment; for if it were not the property of that corporation at the time of the levy, or if they had not in it then any interest which could be attached or levied upon, the sheriff had no right to take it under an attachment and execution against that company.   Everything set up in the answer to justify the taking was impliedly denied, and it being incumbent upon the defendants to establish the owner-ship or interest of the company in the property levied upon, it was undoubtedly competent for the plaintiff, upon that issue, to show that before the levy had been made, a receiver of the corporation had been appointed, and that all the right and title which it had to its property and effects was at the time of the levy vested in him.   The cases of *Savage* v. *Corn Exch. &c. Co.* (4 Bosw. 15), and *Brett* v. *The First Universalist Society of Brooklyn* (63 Barb. 610), which the appellants rely upon, have no application to this case.   They merely hold that a defendant cannot avail himself of a defect of parties or of title in a third person, unless he has set it up in the answer by way of defense, which is a very different case from this.

The appointment of a receiver of the company's effects having been shown, and the fact being undisputed, it was a complete answer to the defendants' right to have the safe levied upon and sold to satisfy the execution which they had against the company.   If, as the defendants insist, the safe was illegally or fraudulently transferred to the plaintiff, the receiver, who then represented both the corporation and its creditors, could alone maintain an action or take any proceed-ing to recover it, he being vested by the law with the sole and full authority to do so (*Talmage* v. *Pell*, 7 N. Y. 328).

The only question then that remains is whether the de-fendants are answerable for the taking of the contents of the

safe. There would be no doubt of the sheriff's liability, if he had no right to take the safe, and could not take it, as it was locked, without taking the contents. He would be answerable for the entire act. The safe was in the plaintiff's possession upon his premises. The plaintiff had filled it with silk and had locked it. He was under no obligation to unlock it and take out the silk, to enable the sheriff to do what he had no authority to do, take it out of the plaintiff's possession and sell it, to satisfy the execution upon the plaintiff's judgment. If the sheriff had had the right to levy upon the safe, and to enable him to take it had requested the plaintiff to unlock the safe and remove the contents, and the plaintiff would not, a very different question might have arisen ; or if the sheriff, after taking away the safe and opening it, had brought back to the plaintiff the contents, the plaintiff would have been bound to have accepted the silk, and its return would have gone so far in the reduction of the damages. He did not however do this. He testified that he notified the plaintiff to be present at the opening of the safe, whilst the plaintiff testified that he never received any such notice; that the sheriff never offered to return the silk to him, nor did any one upon the sheriff's behalf. That he, the plaintiff, never received any intimation from any person as to where the silk was after it was taken away with the safe, and never knew until apprised of it upon the first trial of this cause.

After the safe was opened, the sheriff took out the silk, and took it to an auctioneer's, where he had it packed in a box, which was nailed up, the sheriff putting his name upon it, and the box at the time of this trial had remained at the auctioneer's for nearly six years.

A plaintiff may not unnecessarily enhance his own damage or loss, so as to make the responsibility of one who wrongfully takes property, under the supposition that he has a right to it, greater than it would otherwise be. There was an attempt to show something of this kind by proving the declaration of one of the plaintiff's employees named Pritchard, to the effect that they gathered up everything there was in the place and put it in the safe, when the plaintiff locked it up, and putting the

key in his pocket, said, now let him (the sheriff) touch it, and I will make him sweat for it; but Pritchard was examined as a witness, and testified that the plaintiff simply told him to put the silk in the safe, to lock it up, to see that the door of the factory was safe, and have a care, saying, "and if they touch the safe, I will make him (the sheriff) sweat for it," which puts a very different coloring upon the matter, it being in evidence that the use previously made of the safe by the company was to put away silk in it, and that the plaintiff used it for that purpose before the levy. His testimony was, "we kept such articles (silk in boxes and on spools) in the safe," and that after he bought the safe the silk was put in it and locked up every night.

But though it is very clear that the sheriff would be responsible for taking both the safe and its contents, the question arises whether the defendants, who simply signed a bond of indemnity, are answerable for the sheriff's taking away the plaintiff's property in the safe. All that the sheriff assumed to levy upon was the safe, which had belonged to the defendants in the execution; but there was no pretense that the contents of the safe belonged to them. The sheriff was apprised that the property in it was the plaintiff's property, but he took it because he could not take the safe, it being locked, without also taking the contents. Were the indemnitors answerable for this? It was held in *Davis* v. *Newkirk* (5 Den. 95), that the indemnitors were liable for the sheriff's levying upon and selling a certain quantity of lumber, for the reason that the bond contemplated such a seizure and sale, the engagement in the bond being to save the sheriff harmless for levying upon and selling the lumber under the execution. This it was held was a virtual request to the sheriff to proceed and do what he did. It was regarded as an act done under the direction and with the advice and concurrence of the indemnitors, for which they were as much responsible as the sheriff. "All," said Chief Justice BEARDSLEY, by whom the opinion of the court was delivered, "who direct, request, or advise an act to be done which is wrongful, are themselves wrong-doers and responsible for all damages." This, it was said in *Ford* v. *Wil-*

*liams* (13 N. Y. 584, 585), was carrying the rule of the liability of those who aid and abet in the commission of a trespass, far enough. " I do not affirm," said Chief Justice Denio, " that that case (*Davis* v. *Newkirk*) was incorrectly decided ; for there was force in saying that all the obligors in the bond might be held to have requested the seizure." They in that case certainly did so, for before the sale they gave the sheriff a bond by which they engaged to save him harmless for levying upon and selling the lumber which he afterwards sold upon the execution ; in addition to which there was some evidence tending to connect the indemnitors with the sheriff in taking away the lumber.

The bond given by the defendants in the present case, after reciting that certain personal property that appears to belong to the New York Silk Manufacturing Company, is claimed by other parties, engages to save the sheriff harmless for levying, attaching and selling, under and by virtue of the attachment, or of any execution which may be issued in the action, all or any personal property which he or *they* shall or may *judge to belong to the debtor*, as well as for entering upon the premises for the taking of any *such property*. The seizure, which is here contemplated, and for which they engage to be responsible, is of property which he or they shall or may judge to belong to the New York Silk Manufacturing Company, and it was the safe, and not its contents, that the sheriff levied upon and sold as the property of that company. If the defendants knew that the safe could not be taken by the sheriff, without his taking the contents of it also, and they had, with that knowledge, directed him to take it, they would undoubtedly have been liable. But there is nothing in the bond, or in the evidence, from which it can be inferred that they contemplated, meant, or directed that the contents should be taken, if the safe could not be taken without doing so. The value of the safe, as found by the jury, was only $400 ; whilst the value of the silk contained in it, was $2,512 ; which with interest, amounted at the time of the trial, to $3,567 04. In other words, what was contained in the safe was worth six times as much as the safe itself, and before the defendants could be held answerable

for this large amount of property, there should, in my opinion, be some evidence to show that they knew before they gave the bond of indemnity, or before the safe was taken, that it was locked, that the plaintiff had the key of it, and would not open it, so as to show that they were apprised that it could not be taken away and sold, without also taking whatever was in it. All that there is in the case is the bond of indemnity, and that the sheriff told Mr. Douglas one of the defendants and indemnitors, that the plaintiff claimed the safe, and demanded a bond of indemnity, which was given, and that some months before this trial, that is several years after the taking, the box was examined at the auctioneer's, at the instance of Douglas, to ascertain the value of the silk contained in it. For all, therefore, that appears in the case, it may have been that Douglas and his co-obligors, would not have been willing, if they had known that the safe was locked, to authorize the sheriff to take it, at the hazard of being answerable for whatever was contained in it. The plaintiffs in an execution, are not answerable for all that a sheriff may do under it, nor are those who indemnify the sheriff. They are responsible only so far as they may have directed or assented to the doing of the acts complained of (*Averill* v. *Williams*, 1 Denio, 501; 4 Id. 295). Thus, as in *Allen* v. *Crary* (10 Wend. 349), where the the plaintiff in the execution pointed out the property to the sheriff, and directed him to levy upon it; or in *Stewart* v. *Wells* (6 Barb. 79), where the plaintiff, after the sheriff had levied upon property, said that the sheriff was going to sell it, and that he, plaintiff, had directed the levy to be made ; or *Fonda* v. *Van Horne* (15 Wend. 631), where the plaintiff directed the sheriff to levy on two cows and a calf, and told him that he would indemnify him ; or in *Herring* v. *Hoppock* (5 N. Y. 413), where the sheriff having levied upon a safe, which was claimed by a third party, refused to sell it, unless he was indemnified, in which the indemnification was regarded as a ratification of the levy, and the cause of the sale. The bond referred to the property which had been levied upon and claimed —the safe—and therefore the giving of the bond was regarded as a virtual request to the sheriff to go on and sell the safe ; or in

*Ball* v. *Loomis* (29 N. Y. 412), where the plaintiff directed the taking and the sale, and indemnified the sheriff, which I believe embraces nearly, if not all the cases in which this question has arisen in this State.

This objection was distinctly raised at the trial. The defendants, at the close of the case, insisted that it had not been shown that the defendants requested the sheriff to levy or remove the property in the safe; that the issuing of the execution was not such a request; nor the giving of the bond of indemnity, which only undertook to save the sheriff harmless for taking or removing what might appear to be the property of the company, and that the property in the safe did not appear to be, nor did the defendants claim it to be the property of the company; that the defendants were not responsible for the goods unless they requested the sheriff to levy upon, remove, or meddle with them, or requested him to remove the safe with the knowledge that it contained the goods, and that there was no evidence of any such request. They asked that the jury should be so instructed, and as, in my opinion, there was nothing in the case from which it can be inferred that the defendants contemplated, meant, or directed the sheriff to take the safe, no matter what might be in it, if he could not take it otherwise, I think they were entitled to the instruction asked, and that there should be a new trial, unless the plaintiff consents to reduce the verdict to the value of the safe and interest.

LARREMORE and J. F. DALY, J. J., concurred.

Ordered accordingly.