### WELLER et al. v. HANAUR et al.

(Circuit Court, E. D. Pennsylvania. July 10, 1899.)

**1. WRONGFUL LEVY OF EXECUTION—LIABILITY OF PLAINTIFF—GIVING OF INDEMNITY BOND.**

An execution plaintiff is only liable as a joint trespasser, for a wrongful levy by the officer on the property of a third person, where he interferes with the action of the officer, by direction or otherwise; but the giving by him to the officer of a bond of indemnity for holding such property is sufficient evidence of such an interference, since it determines the future action of the officer with respect to the property.

**2. SAME—LIABILITY OF SURETY ON INDEMNITY BOND.**

The fact alone of signing as surety a bond of indemnity given by a plaintiff to a sheriff to secure his holding of goods levied on under an execution, and claimed by a third person, does not render the surety liable for the trespass of the officer in wrongfully levying on such goods. Such bonds are in some states provided for by statute, and are favored in general, and there is no such relation between the surety, as such, and the officer, as makes him an active principal in the trespass, or justifies a court in enlarging the liability of his contract. For still stronger reasons, one who merely requests the surety to sign the bond, and agrees to protect him from loss by reason thereof, does not thereby render himself liable for the trespass to the owner of the property.

On Demurrer by Defendant Independence National Bank.

N. Dubois Miller, for demurrant.
C. Wilfred Conard, opposed.

GRAY, Circuit Judge. The statement of plaintiffs' claim sets forth:

That the plaintiffs, J. H. Weller and Robert T. Weller, are now, and at the time of the bringing of this suit and the accruing of the cause of action were, citizens and residents, the one of the territory of Oklahoma, and the other of the state of Missouri. That theretofore they were engaged in a general merchandise business in Garfield county (formerly O county), in the territory of Oklahoma. The defendants Hanaur, Kohn & Co. were, and are still, engaged in general merchandise business in the city of Philadelphia. "Upon the 11th day of August, 1894, the defendants Hanaur, Kohn & Co. caused an attachment to be issued out of the district court in and for the county of Kingfisher, in the territory of Oklahoma, in a certain action there pending, wherein the said Hanaur, Kohn & Co. were plaintiffs and one William Friend was defendant, and directed to the defendant G. W. Johnson, who was sheriff of said O county. Pursuant to the said attachment, the said G. W. Johnson upon the 12th day of August, 1894, at the solicitation of the said Hanaur, Kohn & Co., levied said writ of attachment on the goods and chattels of the plaintiffs, being

general store merchandise of great value, to wit, to the value of two thousand (2,000) dollars, which said merchandise was at that time the property of the said plaintiffs, and in their store building in the town of Waukomis aforesaid, and against the protest of the plaintiffs, and against their will, and at the solicitation of the defendants, the said Hanaur, Kohn & Co., took possession of the said goods and merchandise, and held them from the possession of these plaintiffs at all times since, although these plaintiffs have made frequent demands for the same. That, after the said sheriff had taken the said goods, the plaintiffs made claim therefor, and the said sheriff refused to hold them under said order of attachment unless the said Hanaur, Kohn & Co. would deliver to him a good and sufficient indemnifying bond to indemnify him against loss if the said goods should turn out to be the goods of said William Friend. Whereupon the said defendants Hanaur. Kohn & Co., in order to continue said attachment on the goods of the plaintiffs, solicited the said defendant the Independence National Bank to communicate with the defendant C. L. Gibson, and guaranty to indemnify him if he would enter the necessary bond with the said sheriff in the said attachment proceedings. That thereupon the said defendant the Independence National Bank did communicate with the said defendant C. L. Gibson, and did direct him to enter the necessary indemnifying bond to the said sheriff, and did agree that they (the said Independence National Bank) would guaranty the same; said contract of indemnity being contained in a telegram sent by the said Independence National Bank to the said Gibson upon May 18, 1894, as follows:

" 'Furnish Bond for $4,200.00, suit of Hanaur, Kohn & Co. versus Wm. Friend. We guaranty the same. Burwell & Burwell are the attorneys.'

"And upon the same day the following letter was written by the said Independence National Bank to the said Gibson:

" 'Philadelphia, May 18th, 1894.

" 'C. L. Gibson, Esq., Cashier of Commercial Bank, Kingfisher, Okla.—Dear Sir: We wire you to-day as below. The same is hereby confirmed.

" 'Respectfully,            [Signed]   Theo. E. Weidersheim, Cashier.'

" 'Telegram: Furnish bond for $4,200.00, suit of Hanaur, Kohn & Co. versus Wm. Friend. We guaranty the same. Burwell & Burwell are the attorneys.'

"Whereupon, to indemnify the said sheriff against loss, and to cause the sheriff to hold said goods under such order of attachment, and to prevent him delivering said goods back to said plaintiffs, who made demand on the sheriff for the same, the said defendants Hanaur, Kohn & Co., by Burwell & Burwell, their attorneys, executed and delivered to the said sheriff a certain indemnity bond, in the penal sum of forty-two hundred (4,200) dollars, upon which said C. L. Gibson, at the request of the said Independence National Bank, as before stated, was surety, a copy of which bond is hereunto attached, and marked 'Exhibit A.' "

Thereupon the said sheriff retained possession of the aforesaid personal property, and thereafter sold the same, and turned the proceeds over to Hanaur, Kohn & Co. The plaintiffs allege that the property levied upon and so sold belonged solely to them, and was a part of their general stock, and that by reason of the alleged unlawful and wrongful taking of their goods the plaintiffs were damaged in the sum of $3,000. To this statement of claim one of the defendants (the Independence National Bank), demurs. As the plaintiffs' statement of claim does not accurately and technically set forth the nature and character of the liability to which it is sought to subject this defendant, the grounds of demurrer, as stated, and afterwards amended, do not, as distinctly as is desirable, raise the precise question to be determined by the court. The court therefore is compelled, under what seems to be the Pennsylvania practice, to extract for itself, from the pleadings so constructed and from the argument of counsel, the precise issue upon which the case

turns. In the present case we will consider this question to be sufficiently raised by the demurrer, to wit, whether the Independence National Bank, one of the defendants, by reason of its conduct in sending the telegram from Philadelphia to Oklahoma, requesting Gibson to go upon a bond of indemnity to the sheriff in the attachment proceedings instituted by Hanaur, Kohn & Co., under the circumstances disclosed by the statement of claim, became liable to the plaintiffs as a co-trespasser with the sheriff who seized and sold the plaintiffs' goods.

The plaintiffs' position is stated in the following propositions:

"(1) The sheriff, in making a wrongful levy, was primarily liable for the trespass. (2) The plaintiff in the attachment is liable with the sheriff, as a principal tort feasor. (3) Any one joining in a bond of indemnity given by the plaintiff to the sheriff is liable for the trespass as a joint principal. The act of giving the bond fastens the liability upon him. (4) All who aid or abet in a trespass are liable as joint principals. (5) It thus clearly appears that the bank, having assumed the position of the active director of the levy, has so far become an aider and abettor, in that it will be responsible for the injuries following its act."

As to these propositions, it is to be remarked that it is undoubtedly true that a sheriff who, under an execution against A., by a mistake seizes and levies upon the goods of B., is liable as a trespasser for so doing. He exercises his discretion at his peril, as even his honest mistake in this case works a legal wrong to the true owner, for which such owner has his remedy.

It has also been long settled that the plaintiff in the execution or attachment under which such wrongful levy has been made is not liable for the same, unless he has actively participated and intermeddled in the action of the sheriff. The writ contains the command of the law to the officer to whom it is directed, and it is as the officer of the law that he proceeds under it. Nevertheless, it is the plaintiff who conveys that mandate to the officer, and it has been often decided that he "controls the writ" which has been issued at his instance. He can stay its execution, and can direct in many particulars the mode of procedure under it. If, therefore, a plaintiff direct or advise and procure such a wrongful levy by the officer having his writ in hand, he comes within every definition of a trespasser, and is liable as a joint tort feasor with such officer. He is a principal actor in the wrongdoing complained of. But such active interference by the plaintiff in the wrongful levy must be affirmatively shown; otherwise, to use the language of Chief Justice Gibson in Fitler v. Fossard, 7 Pa. St. 542, "the sheriff is bound to stand the brunt of the stranger's action." It is true that, as the sheriff makes his levy at his peril that the goods levied upon may turn out to be the goods of a stranger, so also he may, at his peril of ultimate liability to the plaintiff in the writ, refuse to comply with the direction of such plaintiff to levy upon particular goods. This refusal would likely be peremptory, or not, according to the degree of certainty with which he believed that the goods were those of a stranger to the writ. In a case of probability, merely, he would be justified in demanding from the plaintiff indemnity as a condition of his proceeding. If the plaintiff accedes to this de-

mand, then by the act of indemnifying the sheriff for his conduct he makes manifest, if not otherwise so, his participation in that conduct, and his responsibility therefor. The giving of the indemnity may thus of itself be evidence of such participation, and fix the liability of the plaintiff as a co-trespasser with the sheriff. To this effect is the case of Lovejoy v. Murray, 3 Wall. 1, cited by plaintiffs' counsel. The plaintiffs had plenary control of their own writ, and the giving by them of the bond to the sheriff was held by the court "equivalent to a personal interference in the course of the proceeding, by directing or requesting the sheriff to hold the goods as if they were the property of the defendants in the attachment."

"In doing this," says Mr. Justice Miller, "they assumed the direction and control of the sheriff's future action, so far as it might constitute a trespass; and they became the principals, and he their agent, in the transaction." In the beginning of his opinion the learned justice thus states the case:

"The question arises upon the hypothesis that a writ of attachment was issued in favor of the present defendants against one O. H. Pratt, which was wrongfully levied by the sheriff on property of the present plaintiff. The bond of indemnity given by the present defendants recites upon its face that the sheriff has already levied the attachment; and there is nothing in the case, except the bond, to show that in making the levy, or in anything done by the sheriff prior to the giving of the bond, he acted under the direction or instruction of the defendants, or at their request. That the attaching creditor is not answerable for the act of the officer, unless he in some manner interferes so as to make himself liable, must be conceded. And, unless the defendants have so interfered in this case as to incur this responsibility, the action cannot be sustained."

It is hard to conceive how better evidence could be adduced of the active, personal interference of the plaintiffs in the writ in the trespass committed by the sheriff, than the giving by them of the bond of indemnity. When we consider that these attaching plaintiffs had plenary control of their own writ, and that they presumably and necessarily knew that the sheriff had declined to proceed further with the levy upon these particular goods, and that he would deliver them to the claimant, as he was expressly authorized to do by the Iowa statute, unless indemnified by the plaintiffs, it becomes too clear for discussion that a compliance with such demand, and the giving of the bond of indemnity, was an express assumption by said plaintiffs of the responsibility for the further acts of the sheriff on this line, and of which, moreover, they received the benefit. It constituted them, not argumentatively and by construction, but directly and actively, principal actors in the trespass. This is the point, and the only point, in this connection, decided by the supreme court in the case referred to, though it is apparently much relied upon by counsel for plaintiffs here. But the reasoning by which the court established the liability of the attaching plaintiff as a joint trespasser with the sheriff is very far from supporting the third proposition stated by the plaintiffs' counsel, as above recited, viz.:

"Any one joining in a bond of indemnity given by the plaintiff to the sheriff is liable for the trespass, as a joint principal. The act of giving the bond fastens the liability upon him."

We are now addressing ourselves to the grounds and reason stated for such a proposition, and not to the cases cited in support of the same. We have seen, in the case of Lovejoy v. Murray, just cited, what legal consequences may flow from the peculiar relation existing between a plaintiff in an attachment and the sheriff executing the same, owing to the control of the plaintiff over his own writ, and his interest in the benefits to be derived from it,—how the giving of a bond of indemnity to the sheriff may of itself, under the circumstances, be sufficient evidence of that participation and interference with the proceedings of the sheriff under his writ which are necessary to constitute such plaintiff a joint trespasser. But, between the surety in the bond of indemnity and the sheriff, that peculiar and special relation does not exist. The surety does not control the writ, and, qua surety, receives no benefit from it or its execution. Presumably at the instance of the plaintiff, he guaranties the plaintiffs' promise or contract to indemnify the sheriff. The sheriff is not bound to obey his orders, and has no relation with him, except the specific contractual relation growing out of the bond. The signing of such a bond as surety cannot, in reason, be considered as evidence that he directed the action of the sheriff, as the giving of the bond by the plaintiff in the writ is evidence of his direction of such action. The bond he signed, and the undertaking by him as surety, is a usual and customary instrument and obligation in the due administration of remedial justice, and as such is recognized and encouraged by the law. In many jurisdictions (as is stated by the court, in Lovejoy v. Murray, to be the case in Iowa) the giving of such bonds is provided for by the statute. To add to the burden thus assumed by the contract, and to, in a manner, penalize an act of suretyship so recognized and encouraged, would, in our opinion, be contrary to the policy and spirit of the law. The mere surety in such a case performs a useful and commendable office, in making possible the determination of a bona fide question of property, in the interest of an honest plaintiff pursuing his rights under the law. This he does by guarantying to the agent of the law the promise of the interested plaintiff to indemnify. We are supposing, of course, a case where the surety is affected by no personal interest in, or possible benefit to be derived from, the execution of a writ, and that there is no express, active conduct, advice, or suggestion on his part to persuade the sheriff to proceed. That the sheriff, upon receiving the bond of the plaintiff, with surety, is willing to proceed, and does proceed, does not, in our opinion, make such surety an active principal in the trespass. It is true that all who aid, counsel, or abet a trespass are principal actors in it. But the fault in the reasoning of plaintiffs' counsel is precisely in the next premise of his syllogism. One who merely performs the office of surety, at the request of the plaintiff, under circumstances described, is not an aider or abettor of the sheriff, who, by reason of receiving the indemnity, proceeds to do an act which afterwards turns out to be a trespass. It is not every act, but for which certain things would not have happened, that can be called the causa causans of such happenings. That he or some other sufficient surety

should have gone on the bond was possibly a condition that made the sheriff willing to proceed, but the act of becoming surety was not a direction, in the sense as we have said before, that the giving of the bond by the plaintiff in the execution is evidence of a direction, to the sheriff to proceed. It is the plaintiff to whom the sheriff looks in such a case. It is ordinarily, as happens here, the plaintiff who requests the surety to perform the friendly office on his behalf. And it is the plaintiff, or his attorney or agent, who gives the bond to the sheriff, and expressly or impliedly directs him to proceed. The surety in such case makes no request, express or implied. He is indifferent as to the sheriff's action. His signature to the bond merely guaranties the plaintiff's promise to indemnify. That on that account the sheriff is willing to proceed cannot make the surety a trespasser. Suppose the sheriff, having levied on property which is claimed by a stranger to the writ, says, as he is authorized to do, to the plaintiff in the execution, who is standing by, "I will not proceed unless you indemnify me, either by a bond with sufficient surety, or by putting a sufficient sum of money in my hands to abide the result and make me safe." The plaintiff thereupon turns to A., his friend, and asks of him a loan of the required amount. A. complies, and lends the money to plaintiff, who puts it in the hands of the sheriff for the purpose stated, and the sheriff thereupon proceeds with his levy. It would be absurd to say that in that case A. would be liable as a trespasser to the claimant. Yet, in the last analysis, the ground of the contention would be the same as that on which the liability of a surety in the indemnity bond is here rested.

Of course, there may be circumstances surrounding the act of the surety in going on the bond of indemnity that would tend to prove an active participation in the trespass afterwards committed. Such surety may have an interest in the proceedings under the writ, or he may have an animus which he displays by giving advice and assistance to the sheriff in the seizure of the goods. A surety in such case comes within the definition of an aider and abettor in the trespass, and is therefore a co-principal with the sheriff. But that is so by reason of facts and conduct entirely dissociated from the mere consent to be surety on a bond of indemnity. It would seem that there were facts and circumstances of this kind in the case of Root v. Chandler, 10 Wend. 110,—one of the cases cited by the plaintiffs' counsel. The facts there were that the plaintiff loaned a pair of horses to one Evan Rice, with permission to proceed as far as Clarence, in the county of Erie, and was requested not to go any further. He proceeded, however, to Batavia, in the county of Genesee, where the horses were taken from his possession by a constable on an execution against Rice, the borrower. After the horses had been in the possession of the constable a short time, a number of the creditors of Rice (of whom the defendant was one) had a consultation, and the constable was directed to detain the horses. The horses were sold under executions of these several creditors, of whom the defendant was one; they having agreed to indemnify the constable against loss, in consequence of the

levy and sale of the said property, in proportion to their several demands upon the property. Here they apparently were sureties for each other; but it was the conduct of the defendant with the other creditors that made him and them responsible for the trespass, and not the mere act of giving the bond. So, also, in the case of Herring v. Hoppock, 15 N. Y. 409, also cited by plaintiffs' counsel as a case where the act of suretyship made the surety liable in trespass. There the sheriff had levied upon a chattel claimed by another than the defendant in the execution. After notice to the sheriff of such claim, the plaintiff in the execution indemnifies him against responsibility for the sale, and the sheriff thereupon sells the property. The court in that case held, as the supreme court in the case of Lovejoy v. Murray held, that such indemnifying creditor was liable as a participator in the trespass committed by the sheriff. It is true that in this case there were two executions placed in the sheriff's hands at the same time,—one by the defendant, and the other by one Jackson; the defendant's having priority. Levies were made and the sale had under both. It was suggested that as other property had been sold, more than sufficient to satisfy the defendant's execution, before the iron safe (the property of the plaintiff) was sold, the sale of that must be regarded as having been made exclusively on Jackson's execution. To this suggestion the court replied that, as defendant was surety on the bond of indemnity given by Jackson to the sheriff, that was sufficient to make him liable as a co-trespasser. It is for this that the case was cited by plaintiffs' counsel. It was not, however, necessary to the decision of the case; and the court had already placed the liability of defendant on the ground that, as execution plaintiff, he had, by giving his bond of indemnity, directed the sheriff to proceed, and thus made the sheriff his agent, and himself a principal, in the trespass. The levies were made under both executions, and the sale was had under both at the same time. The direction originally given to the sheriff by the defendant, when he indemnified him, was what made the defendant a trespasser. He and Jackson were presumably sureties for each other, though that is not important. The interest of the defendant in this case in the levy and sale, and his active participation in procuring both, were certainly sufficient to distinguish it from the bald case of a surety, where there is no other implicating fact or circumstance except the act of becoming surety. Even in the leading New York case of Davis v. Newkirk, 5 Denio, 92, decided in 1847, and cited by plaintiffs' counsel, where the sureties in an indemnity bond to a sheriff were held liable as joint trespassers with the sheriff, we find it stated that there was some evidence going to connect them (the sureties) with Newkirk in taking away the lumber. It is true, however, that the court of appeals did not apparently rely upon that fact in confirming the judgment of the court below. In the court below there was a motion to discharge the sureties, Barker and Yates, as defendants, on the ground that there was no evidence against them. This motion the court refused, and this refusal was the judgment which the court of appeals confirmed. In Ford v. Williams, 13 N. Y.

577, decided in 1856, also cited by plaintiffs' counsel, the court refused to hold liable the attorney of the plaintiff in the execution, who gave the instructions to the sheriff to seize the property which was the subject of the trespass. It appears that the attorney, in the absence of the plaintiff, acting in his name, directed the levy, and gave the bond of indemnity to the sheriff. Denio, C. J., in delivering the opinion of the court, said:

"In general, all who aid or abet the commission of a trespass are liable, jointly or severally, at the election of the party entitled to the action. But where one acts only in the execution of the duties of his calling or profession, and does not go beyond it, and does not actually participate in the trespass, he is not liable, though what he does may aid another party in its commission. The rule was carried far enough when it was held that the sureties in an indemnity bond of a party wishing to procure property to be seized upon legal process were responsible in trespass, the seizure being unwarrantable. Davis v. Newkirk, 5 Denio, 92. I do not affirm that that case was incorrectly decided, for there was force in saying that all the obligors in the bond might be held to have requested the seizure; but the principle clearly would not extend to the scrivener who drew the bond, or the attorney who made out the execution, though they knew the purpose to which they were to be applied."

In the case of Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261, although the court, referring to previous New York decisions, seems to decide in favor of the liability of the surety on a bond of indemnity given to the sheriff, and to support the contention of the plaintiff in this case, yet it is to be observed that in that case both the defendants Hyman and Morris were creditors, and interested in the execution under which the trespass was committed, presumably deriving benefit therefrom. The language of the court must therefore be taken with reference to this state of facts, when it says:

"It does not, therefore, admit of any doubt but that the plaintiff made out an exceptional case to recover against the defendants Hyman and Morris. Their liability for the original trespass committed by the sheriff was presumptively established by their approval and satisfaction of his act, manifested by the execution of a bond of indemnity to him."

The foregoing are all the New York cases referred to by plaintiffs' counsel. The Missouri case, decided many years ago, in regard to the seizure of certain slaves by the sheriff, does not seem to have been a well enough considered case to deserve consideration. One other case, however,—that of Screws v. Watson, in 48 Ala. 628,—does adopt the reasoning of the New York courts which makes the surety liable under such circumstances. This reasoning is as unsatisfactory to this court as it was to Chief Justice Denio in Ford v. Williams; but as this court is not bound, as Judge Denio was, by the decision of the New York court, we decline to follow the precedents that those courts have made.

Trespass to personal property is a substantial and real interference with rightful possession. It is an active aggression on a right of property, and involves active affirmative and personal interference and participation. The law considers the matter of causation practically,—so as to secure the ends of justice. A train of antecedents, but for which the complained-of fact would not exist, may always be pointed out, but it does not follow that any one of them is a juridical cause of such fact. The practical manner in which the

common law deals with the subject is evidenced in the ancient maxim, "In jure, causa proxima, non remota, spectatur." No cases other than those referred to have been cited by counsel for plaintiff in his able and ingenious argument, and none others have been found that have any bearing on the question here considered. Some of these cases, as has been pointed out, deal with circumstances which deprive them of the weight claimed for them as authority for the proposition that the bald fact of becoming surety on a bond of indemnity, without more, makes such surety a co-trespasser. The one or two others which seem to support this proposition must be disregarded, in the view taken by this court of the law. If, then, the surety, under the circumstances supposed, is not to be held liable as a co-trespasser, then it follows that one who merely advises or requests such surety to execute the bond of indemnity cannot be held. But, even if the proposition referred to, as to the liability of the surety, were conceded, and the reasoning of the New York courts in that regard adopted, it would not follow that one in the position of the Independence National Bank, the demurrant in this case, under the circumstances disclosed in the statement of claim, would be liable as a co-trespasser. The conduct of the bank, as a cause of the sheriff's action, is too remote to be considered. No case has been cited or found that holds one in the position of the demurrant in this case liable. The court is constrained, therefore, to sustain the demurrer. Let judgment be entered accordingly.